**BICKERTON LEE DANG & SULLIVAN**
A LIMITED LIABILITY LAW PARTNERSHIP
JAMES J. BICKERTON          3085
STANLEY H. ROEHRIG          664
Topa Financial Center, Fort Street Tower
745 Fort Street, Suite 801
Honolulu, Hawai'i  96813
Telephone:  (808) 599-3811
Email:  bickerton@bsds.com; shroehrig@bsds.com

**AFFINITY LAW GROUP**
RAYMOND C. CHO              8337
VAN-ALAN H. SHIMA 8176
1188 Bishop Street, Suite 3408
Honolulu, Hawaii 96813
Telephone:  (808) 545-4600
Email :  vshima@affinitylaw.com

Attorneys for Plaintiffs
KARL P. LIZZA, GARY L. DEAN and JOHN J. MAUCH
Individually and on behalf of all others similarly situated

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KARL P. LIZZA, GARY L. DEAN, JOHN J. MAUCH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY and DOE DEFENDANTS 1-50, <br><br> Defendants. | CIVIL NO.13-00190 HG-BMK <br> (Class Action) <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO [62] MOTION BY DEFENDANT DEUTSCHE BANK** <br> *(Caption continues on next page)* <br><br> HRG DATE:  December 5, 2013 <br> TIME:  10:30 a.m. <br> JUDGE:  Helen Gillmor <br><br> ECF No. 62 |

**NATIONAL TRUST COMPANY TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; CERTIFICATE OF COMPLIANCE WITH LR 7.5(e); DECLARATION OF JAMES J. BICKERTON; EXHIBITS A-K; CERTIFICATE OF SERVICE**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO [62] MOTION BY DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................1

II.     FACTS ...................................................................................2

A.      New Century Had Nothing To Assign after 2007 .........................2

        1.      Deutsche Avoids Mentioning that the Notes and Mortgages Were
                Never Assigned To It by New Century .................................3

                a.      Lizza ...............................................................3

                b.      Dean ...............................................................4

                c.      Mauch ..............................................................5

        2.      Deutsche's Purported Non-Judicial Foreclosure Assignments and
                Sales of Plaintiffs' Properties ..........................................7

                a.      Lizza ...............................................................7

                b.      Dean ...............................................................9

                c.      Mauch .............................................................10

        B.      Any Assets New Century Had after August 1, 2008 Could Only Be
                Assigned by the Liquidation Trustee ..................................11

III.    THE HAWAII FORECLOSURE STATUTE AND ITS REQUIREMENT
        OF A VALID ASSIGNMENT ...................................................12

IV.     DEUTSCHE'S MOVING PAPERS CONCEDE THE UDAP SCHEME OF
        CREATING FALSE ASSIGNMENTS IN 2009, 2010 AND 2011 TO
        COVER UP GAPS IN THE TITLE IN PRIOR YEARS ............................15

        A.      Deutsche's Claim That Its Securitization Scheme Sanitizes Its Later,
                Invalid "Assignments" Has Been Rejected by this Court. .................16

                1.      *Deutsche Bank v. Williams* Should Control Here .....................16

i

2.      Likewise, Deutsche's "Confirmatory Assignment" Theory Defies Logic and Was Rejected in Williams ............................19

3.      Judicial Estoppel Also Precludes Deutsche's "Confirmatory Assignments" Theory.................................................................20

B.    Only the Liquidation Trustee Had Authority after August 1, 2008 to Make the Assignments .........................................................................21

C.    Plaintiffs' Notes Would Have Been Difficult To Securitize because They Were Not Properly Endorsed, Raising Further Questions.........22

D.    Plaintiffs Have Standing To Contest the Purported Assignments Precisely as They Have Done.................................................................23

1.      Defendant Has Conceded Standing, and, in any event, Remand Would Be The Proper Remedy, Not Dismissal. .......................23

2.      The Law in this Circuit is That Parties Always Have Standing to Challenge Void *Ab Initio* Assignments. ................................24

E.    Deutsche Is the Proper Defendant.......................................................28

F.    Plaintiffs' Claims Are Timely .............................................................32

G.    The FAC States All of the Elements for Its Claims ............................34

1.      The FAC States an Actionable UDAP Claim...........................34

a.      The FAC presents sufficient facts showing Deutsche's participation ...................................................................34

b.      Plaintiffs are consumers and have standing to bring a UDAP claim...................................................................34

c.      The FAC sufficiently alleges damages and causation....36

2.      The FAC States an Actionable IIPEA Claim............................36

H.    Wrongful Foreclosure Is Recognized in Hawaii .................................37

V.    CONCLUSION..............................................................................................38

# TABLE OF AUTHORITIES

## Federal Cases

*Billete v. Deutsche Bank Nat. Trust Co.*,
2013 WL 2367834 (D. Haw. May 29, 2013)......................................................27

*Butler v. Deutsche Bank Trust Co. Americas*,
2012 WL 3518560 (D. Mass. Aug. 14, 2012) ..................................................26

*Christiansen v. Big Island Fish Connection, Inc.*,
885 F.Supp. 207 (D.Haw. 1994).........................................................................23

*Culhane v. Aurora Loan Services of Nebraska*,
708 F.3d 282 (1st Cir. 2013)...............................................................................26

*Deutsche Bank Nat. Trust Co.v. Williams*,
2012 WL 1081174 (D. Haw. Mar. 29, 2012) .............................................*passim*

*In re Kekauoha–Alisa*,
674 F.3d 1083 (9th Cir. 2012) .....................................................................13, 35

*Koufos v. U.S. Bank, N.A.*,
2013 WL 1189502 (D.Mass. Mar. 21, 2013) .............................................24, 26

*Lewis v. Casey*,
518 U.S. 343 (1996)...........................................................................................31

*Lewis v. Symantec Corp.*,
2013 WL 2554881 (N.D. Cal. Jun. 10, 2013) ............................................24, 29

*Lewis v. Tulalip Housing Ltd. P'ship. No. 3*,
2011 WL 6140881 (W.D. Wash. Dec. 9, 2011) .........................................24, 29

*Lima v. Deutsche Bank Nat. Trust Co.*
2013 WL 1296757 (D.Haw. March 29, 2013) ...................................................29

*Lima v. Deutsche Bank Nat. Trust Co.*,
2013 WL 1856255 (D.Haw. April 30, 2013) ..............................................28, 31

*Lowther v. U.S. Bank N.A.*,
2013 WL 4777123 (D.Haw. Sept. 4, 2013)...........................................32, 33, 38

*Miller v. Homecomings Financial, LLC*,
   881 F.Supp.2d 825 (S.D.Tex. 2012) ................................................................13

*Mitchell v. Hawley*,
   83 U.S. 544 (1872) ........................................................................................14

*Mutua v. Deutsche Bank Nat. Trust Co.*,
   2012 WL 1517241 (D.Minn. Apr. 30, 2012) ....................................................14

*In re New Century TRS Holdings Inc.*,
   407 BR 576 (D.Del. 2009) .........................................................................12, 25

*Nottage v. Bank of New York Mellon*,
   2012 WL 5305506 (D.Haw. Oct. 25, 2012) .....................................................13

*Ross v. Deutsche Bank Nat. Trust Co.*
   933 F.Supp.2d 225 (D. Mass 2013) ...........................................................21, 26

*Rundgren v. Bank of New York Mellon*,
   2010 WL 4066878 (D.Haw. Oct. 14, 2010) .......................................32 n17, 33

*In re Schwartz*,
   954 F.2d 569 (9th Cir. 1992), *superseded by statute on other
   grounds,* .......................................................................................................26

*Scruggs v. Brown*,
   2002 WL 1585531 (N.D.Cal. July 10, 2002) ..............................................24, 29

*Spewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001) ...................................................................34, 36

*U.S. v. Washington*,
   2013 WL 1314420 (D.N.H. Mar. 28, 2013) .....................................................13

*Valencia v. Carrington Mortg. Servs.*,
   LLC, 2013 WL 375643 (D.Haw. Jan. 29, 2013) ...............................................37

*In re Veal*,
   450 B.R. 897 (9th Cir. BAP 2011) ..................................................................12

*Yau v. Deutsche Bank Nat. Trust Co.*,
   2011 WL 8327957 (C.D. Cal. May 9, 2011) ............................................... 30-31

## State Cases

*Cieri v. Leticia Query Realty*,
  80 Hawaiʻi 54 (1995) ...................................................................29 n15

*Eastern Star v. Union Bldg. Materials Corp.*,
  6 Haw. App. 125 (App. 1985) ...............................................29, 29 n15

*Flores v. Rawlings & Co*,
  117 Hawaiʻi 153 (2009) ........................................................................36

*Fuller v. Pacific Med. Collections*,
  78 Hawaiʻi 213 (Haw. App. 1995) ...............................................29 n15

*Hawaiʻi Cmty. Fed. Credit Union v. Keka*,
  94 Hawaiʻi 213 (Haw. 2000) ..............................................................35

*Henry Waterhouse Trust Co. v. King*,
  33 Haw. 1 (Haw. 1934)........................................................................30

*Lee v. HSBC Bank USA*,
  121 Hawaiʻi 287 (2009) .......................................................................12

*McElroy v. Maryl Grp., Inc.*,
  107 Hawaiʻi 423 (Haw. App. 2005) ............................................. 35-36

*Meridian Mort. Inc. v. First Haw. Bank*
  109 Hawaiʻi 35 (Haw. App. 2005) ....................................................37

*Murphy v. Lovin*,
  128 Hawaiʻi 145 (Haw. App. 2011) .............................................30 n16

*Roxas v. Marcos*,
  89 Hawaiʻi 91, 969 P.2d 1209 (Haw. 1998).....................................21

*U.S. Bank Nat'l. Ass'n. v. Castro*,
  129 Hawaiʻi 294 (Haw. App. 2013) .................................................21

**Statutes**

HRS § 480-1.................................................................34, 35

HRS § 480-2(a) .................................................................29

HRS § 480-13(b)(1) ...........................................................34

HRS § 667-1 (2008)...........................................................12

HRS § 667-5................................................................13, 19

HRS §§ 667-21, *et seq.* .......................................................12

New York Trust Law § 7-2.4 ..........................................27 n14

**Other Authorities**

6 Am. Jur. 2d, *Assignments* § 122 (2013)..............................13

1998 House Journal at 979:  Conf. Com. Rep. No.75 (1998) .................................12

## I.      INTRODUCTION

Plaintiffs hereby submit their Memorandum in Opposition to Defendant Deutsche Bank National Trust Company's ("Deutsche" or "Defendant") Motion to Dismiss Plaintiffs' First Amended Complaint ("Motion").  Deutsche argues that Plaintiffs' entire June 24, 2013 First Amended Complaint ("FAC") merits dismissal because Plaintiffs purportedly lack standing and fail to state any claim.

To begin, Deutsche surprisingly contends that the 2009, 2010 and 2011 "assignments" of Plaintiffs' mortgages to three different Deutsche real estate trusts, are, in fact, irrelevant.[1]  See Deutsche's Memorandum in Support of Motion (Doc. 62-1) at 3.  This could not be more untrue and revealing.  As explained in the FAC and below, Deutsche needed the false assignments created in 2009, 2010 and 2011 to utilize the speedy, inexpensive and un-scrutinized non-judicial power of sale foreclosure process, and to avoid the expense, delay and risks involved with proving its previously-claimed, (but flawed), circuitous chain of title.

Here, Deutsche's foreclosures of Plaintiffs' properties were performed using a claimed status by Deutsche as "mortgagee," claiming such status by way of certain purported 2009, 2010 and 2011 "assignments" which were not and could never have been valid.  Deutsche either did not own Plaintiffs' mortgages or, if it

---

[1] As discussed elsewhere herein, the Lizza mortgage appears to have been the subject of **two** late "assignments" by entities purporting to act for New Century.

did own them, it owned them via some circuitous chain of assignments which

*predated* the creation of the false "assignments."

Thus, instead of being "irrelevant," the trumped-up "assignments" emanated

from an entity that:  (a) no longer had anything to assign, since New Century

Mortgage Corporation ("New Century"), assigned away all its interests in 2004,

2005 and 2007 to *third parties other than Deutsche* during securitization; **and** (b)

had no assets, as they had been conveyed to the Bankruptcy Trustee on August 1,

2008 pursuant to court order.

## II.    FACTS

Lizza once owned that real property located at 75-5776 Kuakini Highway

#316, Kailua-Kona, Hawaii 96740 ("Lizza's Property"); Dean owned that real

property located at 75-313 Aloha Kona Drive, Kailua-Kona, Hawaii 96740

("Dean's Property"); and Mauch owned real property located at 47-059 A Lihikai

Drive, Kaneohe, Hawaii 96744 ("Mauch's Property," with those of the Class,

collectively, the "Properties.")

### A.    New Century Had Nothing To Assign after 2007.

The first UDAP theory described in the FAC is that the 2009, 2010 and 2011

assignments of Plaintiffs' mortgages *could not have been made by* New Century,

because New Century purports to have assigned them to entities *other than*

*Deutsche* when they were originated in 2004, 2005 and 2007.  Nonetheless, New

Century executed purported ***additional assignments*** of the ***same notes and mortgages*** directly to Deutsche in 2009, 2010 and 2011 (the "Assignments").  The false second set of Assignments were then utilized as the foundation for all the non-judicial foreclosures by Deutsche of Plaintiffs' homes and those of the Class members.  All of this is set forth in detail at FAC ¶¶ 10-12, 23-29, 35-54 .

        1.     <u>Deutsche Avoids Mentioning that the Notes and</u>
              <u>Mortgages Were Never Assigned to It by New Century</u>

In its Motion, Deutsche states that Plaintiffs' loans and mortgages were "assigned and conveyed" into three securitized Trusts in 2004, 2005 and 2007, "<u>before</u> the Liquidating Trustee was appointed on August 1, <u>2008</u>."  Doc. 62-1 at 21-22 (underline in original).  Deutsche uses the passive voice intentionally to avoid the Court's focus on ***who*** purportedly assigned the notes and mortgages to Deutsche in 2004, 2005 and 2007, ***because it plainly was not New Century***.  In fact, the entity that Deutsche's Pooling and Servicing Agreements ("PSA") identify as the "Depositor" – who transferred the notes and mortgages to Deutsche – was ***an entity other than New Century's direct assignee***.

        a.    **Lizza**

Deutsche alleges in regards to Plaintiff Lizza that "Section 3.01 of the Lizza Trust Agreement, p. 9, provides that the notes and mortgages … are assigned and conveyed to DBNTC as Trustee for the NC 2004-4 Trust no later than …

December 16, 2004." Doc. 62-1 at 6. If the Lizza Trust Agreement may be presented on a motion to dismiss, then the Court can also consider the Prospectus Supplement for the same securitized trust, which appears to state that New Century as "Loan Originator" assigned the note and mortgage to a company named "New Century Credit Corporation." See Summary of Lizza Prospectus Supplement.[2] That does not appear to be the same company identified in the Lizza Trust Agreement as the entity from whom Deutsche directly acquired the note and mortgage, which was yet a third entity, "New Century Mortgage Securities LLC."[3]

### b. Dean

Regarding Dean, Deutsche acknowledges: "Section 2.01 of the Dean PSA, p. 67, provides that the notes and mortgages in that pool are assigned and conveyed to DBNTC, as 'Trustee' for the MSAC 2007-NC 3 Trust, no later than … May 31, 2007." Doc. 62-1 at 7-8. The Prospectus Supplement for this Trust appears to reflect New Century as Originator but seems to indicate that the notes and mortgages were assigned and conveyed to "NC Capital Corporation" who assigned

---

[2] http://www.sec.gov/Archives/edgar/data/1303871/000112528204006235/b402887-424b5.txt at p. S-3, attached as Ex. "G" to the Bickerton Decl.

[3] http://www.sec.gov/Archives/edgar/data/1311644/000088237704002754/d292036.txt at Ex. 3.1, attached as Ex. "H" to the Bickerton Decl. (Amended and Restated Trust Agreement)

4

and conveyed them in turn to "Morgan Stanley Mortgage Capital Inc." (Sponsor).[4]

However, the Dean PSA that Deutsche cites at footnote 6 of its memorandum

appears to list the "Depositor" who conveyed the notes and mortgages to Deutsche

as "Morgan Stanley ABS Capital, Inc."  By the above, the Dean note and mortgage

*may* have reached Deutsche as Trustee after New Century originated it, (if it ever

did reach Deutsche), but it plainly was not assigned **directly** by New Century to

Deutsche.

### c.    Mauch

Regarding Mauch, Deutsche states:  "the Mauch PSA, p. 48-49 provides that

the notes and mortgages … are assigned and conveyed to DBNTC as Trust for the

2005-NC 4 Trust no later than … August 16, 2005."  Doc. 62-1 at 8.  The

Prospectus Supplement for the Mauch PSA appears to reflect that loans in the trust

were originated by New Century and then were assigned and conveyed to

"Carrington Securities, LP."[5]  However, the PSA attached by Deutsche as Exhibit

16 states that "Stanwich Asset Acceptance Company, LLC" is the entity that

conveyed the note and mortgage to Deutsche.  *See* Doc. 62-12 at 7, § 2.01.   If

---

[4]

http://www.sec.gov/Archives/edgar/data/1030442/000091412107001347/ms87412 49-424b5.txt, at pp. S-6, 30 attached as Ex. "I" to the Bickerton Decl.

[5]

http://www.sec.gov/Archives/edgar/data/1325289/000095013605005032/file001.ht m,  at pp. S-3,24,25 attached as Ex. "J" to the Bickerton Decl.

Stanwich received the mortgage from someone who received it from New Century, Deutsche has presented no such assignment document.

Deutsche's failure to do so, like its failure to show how each PSA "Depositor" actually acquired Plaintiffs' mortgages, shows that such instruments are not readily available, (if they exist at all).  This problem led Deutsche to have to fabricate new, more plausible "assignments" directly from New Century, years after New Century had already assigned away its interests in the mortgages to entities other than Deutsche *or* Deutsche's claimed "Depositors."

Furthermore, regarding all three Plaintiffs, Deutsche states "Plaintiffs' notes and mortgages were ***already assigned*** and conveyed to DBNTC, as trustee for the three trusts, ***before*** the Liquidating Trustee was appointed on August 1, 2008 …(.)" Doc 62-1 at 21-22 (emphasis added).  This admission was also made by Deutsche in its prior June 3, 2013 Motion to Dismiss (Doc. 39-1 at 22-23). Deutsche's use of the passive voice shows that it is ***still*** concealing exactly how it purports to have acquired the notes and mortgages before 2008.  Even if discovery demonstrates a complete chain of assignments from New Century to Deutsche, the proof of such a "daisy-chain" of assignments would merely render the 2009, 2010 and 2011 assignments – *the ones Deutsche actually used to foreclose* – invalid, false and deceptive.

Ronaldo R. Reyes of Deutsche Bank National Trust Company stated under oath on April 22, 2013 in support of Deutsche's Notice of Removal (Doc. 1-21) that (1) Deutsche "has been in possession of the originals of the Lizza Note and the Lizza Mortgage **since at least November 9, 2004**;" (2) "has been in possession of the originals of the Dean Note and Dean Mortgage **since at least December 18, 2006**;" and "is currently in possession of the original of the Mauch Note and the Mauch Mortgage **since at least April 26, 2005**."  Doc. 1-21 at ¶¶ 18, 28 and 38 (emphasis added).

Physical possession of a mortgage is meaningless unless there is an instrument assigning the mortgage for every step in the chain.  The fact that Deutsche presents no such mortgage assignments with their voluminous attachments – other than the phony "direct-from-New-Century-to-Deutsche" assignments created in 2009, 2010 and 2011 – tells us that it cannot present such assignment instruments.

      2.      <u>Deutsche's Purported Non-Judicial Foreclosure Assignments and Sales of Plaintiffs' Properties.</u>

      **a.    Lizza**

Hawai`i counsel for Deutsche's Bureau of Conveyance ("BOC") Lizza Assignment and non-judicial foreclosure was Walter Beh, II ("Beh").  Beh states in his Affidavit of Foreclosure Sale Under Power of Sale dated April 25, 2011 ("FORC"), attached as Exhibit ("Ex.") "A" to the declaration of James J. Bickerton

("Bickerton Decl."),[6] that the non-judicial foreclosure of Lizza's Property was based on BOC Assignment of Mortgage and Note No. 4006464 from New Century Mortgage Corporation "to Deutsche Bank National Trust Company as indentured trustee for the New Century Home Equity Loan Trust 2004-4… **executed on September 15, 2010 by New Century Mortgage Corporation**…(.)" Doc. 62-23 (emphasis added).

However, the Lizza FORC, on closer inspection, reflects that there were actually *two* purported Assignments of the Lizza note and mortgage on *two* different dates, from New Century directly to Deutsche.  The first is dated September 15, 2010.  See *id.*  The second assignment, dated February 2, 2011, purports to be executed by Carrington Mortgage Services LLC, *also long after* New Century transferred its assets to the Liquidation Trustee in 2008.  See Bickerton Decl., Ex. "B" (not presented by Deutsche herein to date).  Pursuant to the FORC, the second assignment was utilized in the first of three mandatory notices of sale to be held on March 24, 2011, published in the Honolulu Advertiser on February 24, March 3, and March 10, 2010.  See Bickerton Decl., Ex. "A" (at Ex. "D" thereto).  That sale was postponed by Notice, however, utilizing the *first* assignment, as published in the Honolulu Advertiser on April 14 and April 22,

---

[6] Deutsche agrees that the Court may take judicial notice of the FORCs filed at the BOC as being in the public record and can consider them also due to their being inherent in and integral to Plaintiffs' claims.  See Doc. 62-1 at fn. 4.

2011.  *Id.*, at Ex. "D-1".   Both Foreclosure Notices, state that: "[t]his action is an attempt to collect a debt."

Lastly, the Lizza Note identified in the Lizza Assignment is stamped but ***was never endorsed,*** so there no evidence that it ever left New Century's ownership before August 2008, when New Century lost all authority over its holdings.  See Doc. 62-6.

### b.     Dean

Hawaii attorney Lester K.M. Leu (of Leu & Okuda) ("Leu") states in the BOC-filed Dean FORC dated July 2, 2009, at ¶¶ 2, 4, that Deutsche is the holder of Dean's Note and Mortgage as Trustee for the Morgan Stanley MSAC 2007-NC3 Trust, by an assignment dated January 19, 2009.  *See* Bickerton Decl., Ex. "C" (attached hereto for convenience; also in record at Doc. 34-10 at 2).  The referenced assignment reaffirms the January 19, 2009 date.  *See* Doc. 34-10 at 37, 38. The Dean FORC also reflects in its Exhibit 4 that Saxon Mortgage Services is attempting to collect a mortgage in default, and at Exhibit 5, the Notice of Sale, that the mortgagee, Deutsche, is giving notice of intent to foreclose to collect the same debt.  *See* Doc. 34-10 at 42-44.

The 2009 Dean Note utilized by Leu to foreclose is ***not*** endorsed by the lender New Century.  *See id*. at 14.  In contrast, the original Dean Note relied on by

Deutsche in its Notice of Removal shows that it was purportedly endorsed (in blank) by the lender, New Century.  *See* Doc. 1-9 at 4.

### c.     Mauch

Finally, with respect to the assignment of Mauch's property, the Mauch FORC dated January 17, 2010 by Beh describes, in part, that the foreclosure is by mortgage assignment "as assigned to mortgagee by assignment recorded as aforesaid as document number 3915646," see Bickerton Decl., Ex. "D", at ¶3, which "assignment" provides in part that the assignment is dated November 10, 2009, see *id*., Ex. "E."  That November 10, 2009 assignment purports to be executed by Carrington Mortgage Services LLC, under power of attorney for New Century – just like the 2010 and 2011 Lizza Assignments – long *after* New Century transferred its assets to the Liquidation Trustee in 2008.

Also, in the Notice of Sale attached to the Mauch FORC, Deutsche gives notice of the foreclosure as an attempt to collect a debt.  See *id*., Ex. "D" at Ex. "A."

The Mauch Note reflects an ambiguous endorsement.  See Doc. 1-13 at 2-3. First, the signature is purportedly executed at page 5 of 5 of the note, but there is no endorsement of the note at page 5 of 5.  However, on the next page that lacks a page number, Doc. 1-13 at 3, there appears to be an endorsement stamp without signature.  Deutsche recently showed Plaintiffs another copy of this Note that

10

appears to have a signature on the un-numbered page, but the one that Deutsche has placed in the record does not.

### B.   Any Assets New Century Had After August 1, 2008 Could Only Be Assigned by the Liquidation Trustee

Plaintiffs cannot know if New Century had in fact assigned away all its interest in the Plaintiffs' notes and mortgages in 2004 to 2007, as the Prospectus Supplements for the PSAs appear to show and Deutsche now claims.  Perhaps those assignments failed for some reason, such as the aforementioned questions concerning the endorsements of Plantiffs' notes.  Discovery *may* ultimately answer these questions.

If New Century in fact retained ownership of the mortgages after 2007 (a fact Deutsche now denies), then the Court must examine whether New Century could have assigned whatever it retained in 2009, 2010 and 2011.  Because of this lack of certainty, the FAC alleges as an additional or alternative claim that the purported "assignments" of notes and mortgages in 2009-2011 by entities claiming to be authorized by New Century were UDAPs because those entities actually lacked authority due to New Century's Liquidation Order.  The FAC describes this UDAP scheme in paragraphs 8(c), 10-12, 16 and 30-47.

Summarizing those paragraphs, at the time of attestation of the Lizza, Dean and Mauch Assignments, **there was effectively no New Century Mortgage Corporation in existence and its assets were owned by the Liquidation Trust.**

11

*See In re New Century TRS Holdings Inc.*, 407 BR 576, 585 (D. Del. 2009).  See

also Doc. 62-1 at 21-23.  Also, as of March 29, 2008, MERS' authority to act as

nominee for New Century was rejected by the Bankruptcy Court.  See Doc. 34-9

(MERS "Notice of Rejection of Executory Contract.")

## III.   HAWAII'S FORECLOSURE STATUTE AND ITS REQUIREMENT OF A VALID ASSIGNMENT

There are three ways a bank could foreclose on a Hawai`i mortgagor during

2008-2011.  First was ***judicial*** foreclosure governed by Hawai`i Revised Statutes

("HRS") § 667-1 (2008), which did not require the foreclosing entity to be "the

mortgagee."[7]  Judicial foreclosure, however, generally requires that the foreclosing

entity *at least* be the holder of the appropriately-endorsed note.  *In re Veal*, 450

B.R. 897 (9th Cir. BAP 2011).

The second way a bank could foreclose from 2008-2011 was through ***non-***

***judicial*** foreclosure under Part II of the statute, HRS §§ 667-21, *et seq.*, which

provided "additional safeguards" for consumers which were not available under

Part I.  *See* Conf. Com. Rep. No.75, 1998 House Journal, at 979 (quoted at length

in *Lee v. HSBC Bank USA*, 121 Hawai‘i 287, 292 (2009)).

The third way is the one that Deutsche elected to use on Plaintiffs – ***non-***

***judicial*** foreclosure under the powers of sale contained in the mortgages, pursuant

---

[7] A full copy of Chapter 667 as it stood in the years 2008-2011 is attached for the Court's ready reference as Exhibit "K" to the Bickerton Decl.

to Part I of HRS, Chapter 667, §§667-5 to 667-10 (2008). Because this is ***non***-judicial, arising solely from the power of sale clause contained in the mortgage instrument, it could only be exercised by "the mortgagee, the mortgagee's successor in interest, or any person authorized by the power." HRS § 667-5(a) (2008). Once the foreclosing entity proves it is "the mortgagee" or its legal "successor," it need not produce the actual note. *See Nottage v. Bank of New York Mellon,* 2012 WL 5305506, *7 (D. Haw. Oct. 25, 2012) (explaining Section 667-5 (2008) and its legislative background). Finally, the right to exercise a power of sale is controlled by the terms of the instrument, which must be strictly followed. *Lee,* at 291. *See also In re Kekauoha–Alisa,* 674 F.3d 1083, 1090 (9th Cir. 2012).

Furthermore, it is black-letter law that an assignment divests the assignor of the rights assigned. *See* 6 Am. Jur. 2d, *Assignments* § 122 (2013). Thus, once an assignor has assigned his interest, he cannot re-assign it. As stated in *Miller v. Homecomings Financial, LLC,* 881 F.Supp.2d 825 (S.D. Tex. 2012):

> … the last assignment of the deed of trust, from JP Morgan Chase to Mellon, was filed and recorded …. But that is only one link in a chain of unknown length, ***and does nothing to bridge the remaining gap to the original lender***. If Mellon's assignor had no valid rights in the note or deed of trust, then no such rights were conveyed to Mellon by the assignment.

*Id.,* at 830-831 (footnote and internal citations omitted) (emphasis added). *See also U.S. v. Washington*, 2013 WL 1314420, *1 (D. N.H. Mar. 28, 2013).

13

Of note, in *Mutua v. Deutsche Bank Nat. Trust Co.*, 2012 WL 1517241 (D. Minn. Apr. 30, 2012), the District Court stated, regarding similar Deutsche activities, that the publicly-recorded documents submitted by Deutsche to establish chain of title were a "mess." *Id.*, at *4. The *Mutua* Court explained that Deutsche's problems commenced with the alleged 2009 assignment from the original lender – the *third* in the chain of title – and that when the assignment was made, neither the assignor nor Deutsche actually held record title. *Id.,* at **4-7. Consequently, the Court found the third assignment created several problems, including: (1) it created two different record owners of title to the mortgage; and (2) because the assignor did not have record title at the time it purportedly made the assignment, the assignment suggested possibilities of other problems not otherwise apparent in the recorded chain of title. *Id.*

This line of cases supports and enforces the venerable Latin maxim "*nemo dat quod non habet*," applicable in this case, which translates into "no one gives what one does not have." *See Mitchell v. Hawley,* 83 U.S. 544 (1872). It is a legal rule, sometimes called the "*nemo dat* rule," and it states that the purchase of something from someone who has no ownership rights to it also denies the purchaser valid title.

IV.    **DEUTSCHE'S MOVING PAPERS CONCEDE THE UDAP SCHEME OF CREATING FALSE ASSIGNMENTS IN 2009, 2010 AND 2011 TO COVER UP GAPS IN THE CHAIN OF TITLE IN PRIOR YEARS**

The mortgages for Lizza and Mauch expressly grant the power of sale to "Lender," defined as "New Century Mortgage Corporation."[8] In the Dean Mortgage, Lender is also New Century, but the power of sale is expressly granted to MERS.[9] This explains why Deutsche needed an "assignment" *of the mortgages*, including their powers of sale, separate from any original notes. Without an assignment *of the mortgages*, Deutsche would have been barred from using Chapter 667, Part I to effect a non-judicial foreclosure sale, and would have been compelled, instead, to pursue the judicial foreclosure route instead, where expenses would be greater and its claim of ownership of the note or mortgage subject to heightened scrutiny.

Thus, Plaintiffs' Assignments, (Docs. 62-23, -24 and -25 and Bickerton Ex. "B"), enabled Deutsche to utilize Section 667-5 and the powers of sale contained in the mortgages, which presented the fastest, cheapest but least consumer-friendly method of foreclosure. In sum, without valid assignments *of the mortgages,* Deutsche had no right to foreclose non-judicially. Each foreclosure was consummated by an affidavit (the FORC), which is what actually serves as the evidence that the foreclosure was complete and divested Plaintiffs of title. Each

---

[8] See Docs. 62-7 and -9, respectively, at 3.
[9] See Doc. 62-8.

FORC represented – as authority for the foreclosure – Deutsche's unauthorized and invalid Assignments created in 2009, 2010 or 2011.  Those Affidavits said nothing about the earlier assignments that Deutsche *now* claims occurred  in 2004 to 2007 and, true or not, Deutsche did *not* use the earlier assignments to invoke the machinery of Section 667-5.

**A.    Deutsche's Claim That Its Securitization Scheme Sanitizes Its Later, Invalid "Assignments" Has Already Been Rejected by this Court.**

1.    *Deutsche Bank v. Williams* Should Control.

In response to the original Complaint, Deutsche filed its first Motion to Dismiss on May 3, 2013.  (Doc 39-1).  At page 14 of its Memorandum, Deutsche made an argument entitled "Plaintiffs' Mortgages Were Assigned To DBNTC, As Trustee, Before The Liquidating Trustee's Appointment," arguing: "[a]s to all three named Plaintiffs, … ***their notes and mortgages were assigned and conveyed to DBNTC as 'Trustee' of the Trusts before August 1, 2008***."  Doc 39-1 at 14 (emphasis added).

Plaintiffs' counsel, also counsel for the Williamses in *Deutsche Bank Nat. Trust Co. v. Williams*, 2012 WL 1081174 (D. Haw. Mar. 29, 2012), immediately recognized the significance of Deutsche's contention that the notes and mortgages had been "assigned and conveyed" to it "before August 1, 2008."  *Id.* , at *4. Plaintiffs, accordingly, timely filed the FAC with the new claim based on

16

Deutsche's statement in its May Motion, including those allegations in FAC, ¶¶ 10, 39, 44, 45 and 47, detailing the added claim.

*Williams* demonstrates that Deutsche takes a significant risk when it seeks to judicially foreclose under a purported assignment of a New Century-originated note and mortgage.  In *Williams*, Judge Seabright explained:

> The Williamses factually attack[ed] Plaintiff's prudential standing to foreclose, arguing that there is no evidence establishing that Plaintiff was validly assigned the Mortgage and Note on the subject property.

*Williams,* at *3.  There, just as here, the Williamses presented evidence that the claimed 2009 "assignment" from Home 123 (New Century's affiliate) – presented by Deutsche as the basis for its standing to foreclose – could not be legally valid because New Century's Liquidation Trustee never authorized it.  *Id*.

Deutsche opposed the motion in *Williams* just as it tries here – with an assertion that the problematic 2009 assignment can be overlooked because Deutsche allegedly already acquired the note and mortgage years earlier during securitization.  Judge Seabright, however, grasped the core problem with this argument, recognizing that instead of helping Deutsche, it actually created a ***second*** falsity that completely <u>nullified</u> the "assignment" for another reason:

> … if Plaintiff did indeed obtain the Mortgage and Note through a 2007 PSA, then the ***2007*** PSA is ***yet another reason why the January 13, 2009 assignment is a nullity*** and the Complaint's assertion that Plaintiff obtained the Mortgage and Note from Home 123 is ***untrue***.

17

*Id.*, at *4 (emphasis added).  This quotation goes to the heart of Deutsche's securitization scheme, set out in FAC ¶¶ 8(c), 10-12, 16 and 30-47.

Thus, Deutsche's claims that it has held the mortgages and notes since 2004, 2005 and 2007, long before the "Assignments" of 2009, 2010 and 2011, are "yet another reason why" (1) the later assignments are "a **nullity**" and (2) the assertions that Deutsche made to support its non-judicial foreclosures in the Lizza, Dean and Mauch Foreclosure Notices and FORCs – that it had held the mortgages by the later assignments – are simply "**untrue**."  *Williams*, at *4.  New Century could not assign something to Deutsche that it assigned to someone else years before.[10]

Judge Seabright's second concern in *Williams* – that Deutsche could not present evidence showing the full arc of transfers of the notes and mortgages supposedly running from New Century, via intermediaries, into the securitized trust in 2007 – mirrors Plaintiffs' claim in the FAC, specifically, that Deutsche has engaged in a scheme of creating "Assignments" from an entity that had nothing left to assign precisely to avoid the difficult, expensive or impossible process of showing how Deutsche acquired the notes and mortgages.  It is much simpler to fabricate a clean, "direct-from-New-Century-to-Deutsche Assignment" and avoid the scrutiny of someone like Judge Seabright by using the fabricated "Assignment"

---

[10] This principle embodies the aforementioned *nemo dat* rule.

to conduct a ***non-judicial*** foreclosure under HRS 667-5.   *Williams* should control

here.

> 2.   Deutsche's "Confirmatory Assignment" Theory Defies
> Logic and Was Rejected in *Williams*.

In response to the allegations that New Century had nothing to assign after

the securitization – making its 2009, 2010 and 2011 "assignments" nullities –

Deutsche contends these assignments need not be scrutinized because they were

merely "confirmatory."   *See* Doc. 62-1 at 2 and 14-15.   However, pursuant to the

terms of the PSAs, Deutsche claims to have received the notes and mortgages

**from other entities, not directly from New Century Mortgage Corporation.**

Thus, the false 2009, 2010 and 2011 purported direct assignments could not

"confirm" any past assignment, because ***there was never a prior assignment***

***directly from New Century to Deutsche***.   Rather, at the time of the claimed

securitizations, the PSAs and related trust documents show that New Century

assigned all of its interests in the notes and mortgages to intermediary members of

the securitization chain, who assigned them further down the chain, and so on.

Someone down that chain *may* have assigned them to Deutsche; we just have no

way to know absent the full chain of instruments by which the assignments

allegedly occurred.

Moreover, Deutsche's "confirmatory assignment" argument was also

staunchly ***rejected*** by Judge Seabright in *Williams*.   According to Judge Seabright,

the evidence was that Home 123 sold mortgages to its affiliate NC Capital and that the PSA required NC Capital to deliver to Deutsche assignments for each mortgage loan. *Williams*, at \*4. He thereby recognized that the prior assignment from the original lender, Home 123, was directly to NC Capital, **not** to Deutsche, and any subsequent "assignment" from Home 123 to Deutsche as trustee, was hence *not* confirmatory of the original assignment, and was instead, nothing more than a "nullity." *Id*.

*Williams* is virtually indistinguishable from this case and should be followed. If Deutsche could not lawfully use the 2009 "assignment" to judicially foreclose in *Williams*, it could not do so non-judicially for Plaintiffs here.

    3.    Judicial Estoppel Also Precludes Deutsche's "Confirmatory Assignments" Theory

Finally, judicial estoppel prevents Deutsche from advancing its "confirmatory assignment" theory. Deutsche has steadfastly represented to the Court that Plaintiffs' notes and mortgages were properly securitized before August 1, 2008. Deutsche is estopped from now representing otherwise. Defendant's assurance of proper securitization transfers negates any claims of continued ownership by New Century and New Century's ability to re-transfer that which was already transferred.

The Hawai`i Supreme Court has directed: "[a] party will not be permitted to maintain inconsistent positions or to take a position … directly contrary to, or

'inconsistent with one previously assumed by him….'" *Roxas v. Marcos*, 89

Hawaii 91, 124 (1998).  Deutsche attempts to retain the benefits of *an assumption*

of purported proper securitization of Plaintiffs' notes and mortgages to extricate

itself from the consequences of its UDAP.  The Hawaiʻi courts, however, do not

allow parties to "blow hot and cold" like this in the course of litigation.  *Id.,* at 124.

### B.   Only the Liquidation Trustee Had Authority after August 1, 2008 To Make Assignments.

Regarding Plaintiffs' alternate theory that New Century lacked authority

after August 1, 2008, New Century's inability to assign anything after the

appointment of the Bankruptcy Trustee has already been adjudicated against

Deutsche in Massachusetts federal court in *Ross v. Deutsche Bank Nat. Trust Co.,*

933 F. Supp. 2d 225 (D. Mass. 2013).  It is inappropriate for Defendant not to have

brought *Ross* to this Court's attention.

There, Deutsche similarly argued that "assignments" of New Century notes

and mortgages could still be made after 2008, but the Massachusetts District Court

would have none of it.  It held that, after July 15, 2008, all of New Century's

remaining assets were transferred by operation of law to the Liquidation Trustee;

thus, ***after that date New Century had nothing to assign.*** *Id.,* at 231.  In other

words, the problem of "lack of authority" after the Liquidation Order is really just

another variation on the basic "*nemo dat*" problem – after July 2008, everything

New Century had owned now belonged to the Liquidation Trustee.

21

**C.    Plaintiffs' Notes Would Have Been Difficult To Securitize Because They Were Not Properly Endorsed, Raising Further Questions.**

Proper endorsements for all the Notes are either absent, questionable or defective.  The Lizza Note is unendorsed.  See Doc. 62-6.   The Dean Note (Doc. 62-15) provided in 2009 by Leu as an exhibit to Leu's FORC (Bickerton Ex. "C") and purportedly a copy of "the original," lacks any endorsement, thus creating a direct conflict between the Reyes Affidavit submitted by Deutsche in support of removal, Doc 1-21, and the Dean FORC, Bickerton Ex. "C" at 2-3.  No question exists that the one used to complete the foreclosure was <u>un</u>endorsed, and that, as of 2009, the note was <u>un</u>endorsed, but these conflicting affidavits raise questions regarding which copy is the real Dean Note and did the endorsement that Reyes presents occur before or after August 1, 2008?  Hence, issues of material fact exists for the Lizza and Dean notes regarding how they could have been properly securitized in the first place.

The Mauch note has a smudge that may or may not be an endorsement (and one cannot even tell if the smudge appears on the Note – since this so-called "endorsement" appears on a separate page).  See Doc. 62-19.  One cannot tell, from the copy provided by Deutsche to the Court, if it appears on the back of the

note, on an allonge, or something else.[11]  This too presents a fact issue regarding the regularity of the securitization of Mauch's note and mortgage.

If disputed material facts such as these exist, dismissal must be denied. *Christiansen v. Big Island Fish Connection, Inc*., 885 F.Supp. 207, 211 (D. Haw. 1994).[12]

### D.    Plaintiffs Have Standing To Contest the Purported Assignments.

#### 1.    Defendant Has Conceded Standing, and, in any event, Remand Would Be the Proper Remedy, Not Dismissal.

Deutsche first contends that Plaintiffs lack standing to challenge the defective assignments and bring any claims based on them because they are merely "voidable," and not "void."  See Doc. 62-1 at 10-13.  However, the contracts in issue here are void *ab initio* (*i.e.*, invalid from the outset),[13] as a matter of law.  As described below, in the Ninth Circuit, where an assignment is void *ab initio*, as here, the mortgagor has standing to challenge them.

First, Deutsche's argument on this point actually goes to subject matter jurisdiction.  Any claims that fail to present a case or controversy should be

---

[11] In response to a request by Plaintiffs to Deutsche's counsel for a better copy, a copy was provided in which a signature is visible on the endorsement stamp on the extra page, but this copy has not been attested.

[12] Mr. Reyes "schedules" purporting to show the indentured loans in each trust are <u>not</u> public SEC records.

[13] Plaintiffs expressly plead this in their FAC.  See FAC, ¶¶ 9, 31 and 44.

*remanded, not dismissed*.  *Scruggs v. Brown*, 2002 WL 1585531, *1 (N.D. Cal. July 10, 2002); *Lewis v. Symantec Corp.*, 2013 WL 2554881, *4 (N.D. Cal. Jun. 10, 2013).   As such, Deutsche cannot remove a case, asserting this Court has subject matter jurisdiction, and then move to dismiss it, claiming that the Court does *not* have such jurisdiction.  Similar tactics have been readily rejected.  *See Lewis v. Tulalip Housing Ltd. P`ship. No. 3*, *4 2011 WL 6140881 (W.D. Wash. Dec. 9, 2011) (where the court rebuffed defendant for identical Janus-like positioning in its removal petition, submitting to the Court's jurisdiction, and following with a motion to dismiss claiming lack of jurisdiction).

2. <u>The Law in this Circuit Is That Parties Always Have Standing To Challenge Void *Ab Initio* Assignments.</u>

Here, since the relevant Assignments are legally void, or void *ab initio,* as a matter of law, Plaintiffs have standing to challenge them.  One recent case that is closely on point and should be read at the outset because it makes clear what Plaintiffs are claiming is *Koufos v. U.S. Bank, N.A.*, 2013 WL 1189502, *3 (D. Mass. Mar. 21, 2013) ("If Koufos is correct, New Century purported in 2009 to assign to U.S. Bank something that New Century no longer owned and could not assign.  In that case, the purported assignment was invalid; any foreclosure proceeding grounded on rights obtained under the invalid assignment would be void.").

Because New Century went into bankruptcy on April 2, 2007 and the

bankruptcy was transferred to a liquidation trust effective August 1, 2008, at that point, all assets then became vested solely in the Liquidation Trustee.  FAC at ¶ 30. *See also In re New Century TRS Holdings, Inc.,* at 585.  Deutsche, as a creditor in that bankruptcy proceeding, had actual notice that as of August 1, 2008 New Century's assets all belonged to the Liquidation Trustee and it had neither authority nor an interest in anything to assign in 2009, 2010 and 2011.  FAC at ¶¶ 30-33.

Regarding the Dean Note, similarly, as of January 19, 2009, New Century's contract with MERS, and with it any authority for MERS to act as New Century's nominee, was rejected by the Bankruptcy Court by March 29, 2008 Notice.  See Doc. 34-9.  Accordingly, since New Century had been taken over by the Liquidation Trustee as of August 2008, no-one could act for New Century without his express authorization; nor did MERS have authority to act "as nominee" for New Century after August 1, 2008.  See *id.*

The argument that Plaintiffs lack standing to challenge the assignments is misplaced ***where the contention is that the assignors either had nothing to assign or lacked the capacity or power to assign***, as pleaded by the FAC.

The ICA, in *U.S. Bank Nat`l. Ass`n. v. Castro*, 129 Hawaii 294 (Haw. App. 2013) (dealing with a similar New Century note and mortgage) (attached as Bickerton Decl., Ex. "F"), recently held that, where the defendant borrower in a

non-judicial foreclosure alleged U.S. Bank lacked standing to foreclose because of a break in the chain of the title, "[t]he assertions sufficed to apprise the court of defendants' claim that the non-judicial foreclosure was *void* and that defendants' retained title." *Id.*, at *3 (emphasis added).

The federal *appellate* courts, too, have just recently begun to weigh in specifically on this issue. These cases also make clear that a mortgagee *has* standing to complain about assignment of a debt instrument if the assignment is *void*, rather than voidable. *See Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282 (1st Cir. 2013):

> … plaintiff's challenge to the assignment from MERS to Aurora is premised on the notion that MERS never properly held the mortgage and, thus, had no interest to assign. If this were so, the assignment would be **void (not merely voidable).** Consequently, the plaintiff has standing to challenge the validity of the assignment

708 F.3d at 291 (emphasis added). Many cases holding this **specifically involve New Century and/or Deutsche**. *See id.; Ross*; *Koufos. See also Butler v. Deutsche Bank Trust Co. Americas*, 2012 WL 3518560, *6 (D. Mass. Aug. 14, 2012).

This is also the general rule in this Circuit, *see In re Schwartz,* 954 F.2d 569 (9th Cir. 1992) (finding purported assignment from a debtor *to a bankruptcy creditor* without trustee approval is **void *ab initio,*** as a matter of law), *superseded by statute on other grounds,* and it is being properly applied in this District, *see*

*Billete v. Deutsche Bank Nat. Trust Co.,* 2013 WL 2367834, *7 (D. Haw. May 29, 2013); *Williams*, 2012 WL 1081174 at *4; *Nottage,* 2012 WL 5305506 at *4; *Castro*, at *3 (referred to collectively as the "*Nottage* line of cases").

The cases cited by Deutsche at Doc. 62-1 at 10-12 (hereafter, the "*Velasco* line of cases"), on the other hand, deal with whether a borrower may challenge compliance with a Pooling & Servicing Agreement ("PSA"),[14] and are all inapposite.  Plaintiffs are not making such a challenge here.

Deutsche also tries to argue that Plaintiffs' contention that the assignments are void is "naked assertion" and "legal conclusion."  Doc 62-1 at 11.  That is simply not true.  As detailed above, the FAC explains at length that:  (1) New Century conveyed away all its interests to parties other than Deutsche in 2004 to 2007 (an allegation confirmed by PSAs), and (2) regarding the contention that even if New Century had any assets or interest after 2007, only the Liquidation Trustee could assign same after August 2008.

Per all of the above, the "Assignments" purportedly made in 2009 to 2011 are alleged – on detailed and clear factual grounds – to be void *ab initio* because New Century either lacked anything to assign or was barred by bankruptcy law from making assignments.  Given that the Assignments challenged by Plaintiff are

_____

[14] Plaintiffs do not concede that non-compliance with the PSA renders an assignment merely voidable, since under New York Trust law, failure to deliver possession of the asset in accordance with the trust instrument renders the trust void as to that property, not merely voidable.  *See* New York Trust Law § 7-2.4.

alleged to be *void*, not merely *voidable*, Plaintiffs have standing to challenge them.

To avoid dealing with the problem, Deutsche mischaracterizes Plaintiffs' claim as one that Carrington and MERS lacked authority *to act as agents* for New Century. This is a false, "straw-man" argument. Plaintiffs do not rely on lack of agency authority. Rather, they contend that the actual assignor itself – New Century – lacked any capacity or authority to assign. It matters not whether New Century purported to act through Carrington, MERS or anyone else.

### E.     Deutsche Is the Proper Defendant.

Deutsche argues it may only be sued as Trustee of its various trusts, since the Assignments state that Deutsche is receiving the Assignments in that capacity only. See Doc. 62-1 at 42. First, Deutsche, as with so many other its tactics, has already tried this argument and failed in this Court. In *Lima v Deutsche Bank National Trust Co.,* 2013 WL 1856255 (D. Haw. Apr. 30, 2013), Judge Mollway reached the merits of Deutsche's motion to dismiss after first disposing of the standing question:

> as the claims of class members other than named Plaintiffs are not currently before the court, the court need not address the "unrelated trust" issue here.

*Id*., at *4. Judge Mollway had earlier rejected the claim there was no standing when she found a case or controversy between plaintiffs and the Banks they had sued in in the Banks' *individual capacities*, not in any trustee capacity, just like

here.  *See Lima v. Deutsche Bank Nat. Trust Co.,* 2013 WL 1296757, *4 (D. Haw. March 29, 2013).

Second, by arguing that Plaintiffs have no standing to sue Deutsche in any capacity other than as Trustee, Deutsche is saying that there is no Article III "case or controversy" between Plaintiff and anyone ***other than*** the various Trusts.  If this were true, which it is not ,dismissal would not be the proper remedy.  Any claims that do not present a case or controversy should be ***remanded***.  *Scruggs*, at *1; *Lewis v. Symantec Corp.*, at *4; *Tulalip Housing*, at *4.

Third, as to this Court's jurisdiction over Deutsche individually, Hawaii law allows third parties like Plaintiffs to sue a trustee in her or his individual capacity for torts s/he committed while administering the trust.  A claim under HRS § 480-2(a), prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce" ("UDAP") is a "tort" action.  *Eastern Star v. Union Bldg. Materials Corp.*, 6 Haw. App. 125, 135 (Haw. App. 1985).[15]  And in the context of non-testamentary "business" trusts:  "the liabilities incurred by trustees – whether such liabilities are in contract or in tort or under the terms of a statute – are their

---

[15] Besides the general point that trustees are liable for their torts, UDAP law adds another important layer of liability because it holds that ***anyone*** who actively or passively ***participates*** in the wrongful conduct is liable for damages, if they are fairly traceable to the unfair or deceptive act or practice.  *See Fuller v. Pacific Med. Collections*, 78 Hawai`i 213, 225 (App. 1995); *Cieri v. Leticia Query Realty*, 80 Hawai`i 54, 66 (1995); *Eastern Star*, at 135.

liabilities.  They are principals."  *Henry Waterhouse Trust Co. v. King*, 33 Haw. 1, 3-4, 18-19 (Haw. 1934).  Accordingly, Plaintiffs are entitled to sue Deutsche itself – regardless of the alleged "capacity" in which it strategically positioned itself to foreclose Plaintiffs' mortgages.[16]

The cases Deutsche offers (at Doc. 62-1 at 42) pose no substantive challenge to *Waterhouse*'s common law rule that "the liabilities incurred by trustees," whether "in tort or under the terms of a statute," "are their liabilities."  *Waterhouse*, at 17.  For example, *Yau v. Deutsche Bank Nat'l. Trust Co.*, 2011 WL 8327957 (C.D. Cal. May 9, 2011), was decided under a California statute requiring a plaintiff to allege that a trustee acted negligently or intentionally before s/he could be held personally liable, and the plaintiff did not make that allegation.  No similar statute exists in Hawaii for non-testamentary trusts.

Moreover, the *Yau* Court found (1) the plaintiffs there did not have standing, where plaintiffs had sued multiple Deutsche entities and engaged in prohibited "group pleading" for all, *see id.*, at *2, and (2) that because the complaint there did

---

[16] Should this Court disagree with Judge Mollway in *Lima* and conclude the personal liability of a trustee of a non-testamentary "business" or "investment" trust is limited such that Plaintiffs have no standing to sue Deutsche directly, Plaintiffs requests leave to narrowly amend their pleading to allege a claim against Deutsche for "negligence in selecting, training, retaining, supervising, or otherwise controlling [its] agent[s]."  *Murphy v. Lovin*, 128 Hawai`i 145, 156 n.15 (Haw. App. 2011).

not allege that *any* of the Deutsche defendants ever held plaintiff's note or mortgage, traceability to the sued defendants was not established, *id*.

Here, Plaintiffs do not engage in group pleading, and the FAC clearly states, with direct reference to Deutsche filings, that Deutsche represented it owned Plaintiffs' notes and mortgages, see FAC, ¶ 10, so *Yau's* reasons for lack of standing do not apply.  None of Deutsche's cited cases address the well-settled Hawaii common law rule that a tortfeasor trustee is liable, individually, for his torts.

Deutsche also argues that Plaintiffs can only sue in connection with those Trusts into which their specific mortgages were securitized, see Doc 62-1 at 43-44, but Judge Mollway just held in *Lima* that this argument has no bearing on a motion to dismiss and should not be dealt with at the class certification stage.  *Lima*, at *4.

Deutsche's single-sentence reference to *Lewis v. Casey*, 518 U.S. 343, 357 (1996) to claim that filing as a class action does not solve the problem, is equally misplaced.  *Lewis* dealt with a situation where some of the named plaintiffs were found not to have been injured by the named defendant, and the Supreme Court explained that those injury-free class representatives could not "piggyback" off the injuries of other unidentified class members.  These are clearly not the circumstances here, as each of the named Plaintiffs has adequately alleged direct wrongdoing by Deutsche and his own injury therefrom.

31

### F.      Plaintiffs' Claims Are Timely.

Defendant concedes that Lizza and Mauch's UDAP claims are not time-

barred, see Doc. 62-1 at 31, challenging only the timeliness of Dean's UDAP

claim.  See *id*. at 32.  Since this action was filed March 11, 2013, Deutsche argues

Dean's UPAP claim falls outside of the 4-year statute of limitations because the

period began to run on January 22, 2009, upon the (first) recordation of the Dean

Assignment.  See *id*.

The cases cited by Deutsche are inapplicable.  See Doc 62-1 at 32.  In those

cases, the final wrongful act was well outside the four-year period.  *Lowther v. U.S.

Bank N.A.,* 2013 WL 4777129 (D. Haw. Sept. 4, 2013) (LEK), particularly, does

not compel a finding of untimeliness for Dean's UDAP claim, because, there,

Judge Kobayashi held the recording of the defective assignment (more than four

years before the filing of the complaint) was the key act to trigger the limitations

period.  *Id*., at *12.  Here, Leu recorded the false Dean Assignment, not just once,

but also a **second** time, on July 2, 2009, when he again cited it in and freshly

attached it to the Dean FORC.  See Bickerton Ex. "C", at ¶¶ 2, 4.  Therefore, since

this action was filed on March 11, 2013, and since the second filing of the false

FORC by Leu occurred *less than* four years prior, Dean's UDAP claim is timely.[17]

---

[17] Deutsche's reference to and reliance on *Rundgren v. Bank of New York Mellon*,
2010 WL 4066878, *7 (D. Haw. Oct. 14, 2010) is unavailing, because that section
only applies to *fraudulent concealment*, which is not pleaded here vis-à-vis Dean's

Regarding the intentional interference with prospective business advantage ("IIPEA") claim, Plaintiffs address Deutsche's limitations argument below.

Regarding Plaintiffs' wrongful foreclosure claim, (shown to be actionable below), the Court must apply the *six*-year statute of limitations, as this District recently instructed in *Lowther*.   Judge Kobayashi explained that the federal Court "must predict how the Hawai'i Supreme Court would decide which statute of limitations period applies to a wrongful foreclosure claim," deciding:

> **Count II resounds in tort, but arises from the contractual relationship between Plaintiff and Defendant as a result of the purported Assignment.**   Thus, this Court *rejects* Defendant's argument that Count II is time-barred by § 657–7, and concludes [*sic*] that § 657–1(1) [six years] is the applicable statute of limitations.

*Id.*, at **22-23 (emphasis and brackets added).   The wrongful foreclosure claim here is closely similar to the one in *Lowther*, so Deutsche's attempt to apply a two-year, instead of a six-year, limitations period must be analogously rejected.

---

UDAP claim.  While the main rule espoused by Judge Seabright in *Rundgren* regarding when the limitations period commences for a UDAP claim is the "occurrence rule," it can be harmoniously applied in this case because the actionable, wrongful "occurrence" for Dean took place on July 2, 2009.

### G.     The FAC States All the Necessary Elements for All of Its Claims.

     1.     <u>The FAC States an Actionable UDAP Claim.</u>

         **a.     The FAC presents sufficient facts showing Deutsche's participation.**

Deutsche's argument that the FAC does not establish participation in the schemes alleged is put to rest by FAC ¶¶ 9-11 and 34-46, which allege active and direct participation by Deutsche.  These allegations must be taken as true on a motion to dismiss.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

         **b.     Plaintiffs are consumers and have standing to bring a UDAP claim.**

Plaintiffs are "consumers" under HRS § 480-13(b)(1).  Deutsche incorrectly contends the FAC must be dismissed because Plaintiffs "do not allege that they purchased, attempted to purchase, or were solicited to purchase anything from DBNTC" and "do not allege they made a real estate investment in any transaction that involved DBNTC."  Doc. 62-1 at 37.  Deutsche, however, misapplies the definition of a "consumer" in HRS § 480-1, and overlooks its own admissions in the public record that Plaintiffs ***did*** pay it money in the consumer context.

Under Chapter 480, a "consumer" is "a natural person who, primarily for personal, family, or household purposes, . . . commits money, property, or services in a personal investment."  HRS § 480-1.  "[R]eal estate or residences qualify as

34

'personal investments' pursuant to H.R.S. § 480-1." *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Hawai`i 213, 227 (2000) (quoting *Cieri*, at 69).  Moreover, because loans made by a financial institution are, "by their very nature," "transactions occurring within a 'business context,'" an individual borrower who mortgages her home to a lender "falls within the ambit of" Chapter 480 and is a "consumer" under HRS § 480-1.  *Keka*, at 227; *Kekauoha-Alisa*, at 1091-1092 (homeowner may sue foreclosing mortgagee for damages caused by an unfair or deceptive foreclosure practice).

Plaintiffs' standing as a consumers is further confirmed by Deutsche's publicly-recorded FORCs (Bickerton Decl., Exs. "A," "C" and "D".)  Each attaches a "Fair Debt Collection Letter" giving notice that Deutsche intends to foreclose and that such is an attempt to collect a debt for non-payment of monies.  See *id*.  According to Deutsche, these payments were being made to it or its representatives.  Given these admissions, Deutsche now cannot take the contradictory position that Plaintiffs never "invested" or paid it moneys (even assuming a requirement that a consumer must have paid the defendant rather than any predecessor).

Deutsche's reliance on *McElroy v. Maryl Grp., Inc*., 107 Hawai`i 423, 436 (Haw. App. 2005) to argue that "loan payments do not constitute 'investments' under UDAP" is wrong.  See Doc. 62-1 at 38.  *McElroy* dealt with a plaintiff who

35

was the *guarantor* on a lease and the funds invested for improvements of the

leased commercial property belonged to *the company* for which he was an officer;

thus, (1) no "personal funds" were implicated, (2) there was no direct "investment"

by McElroy and (3) the payment was for business purposes, not a personal

investment.  *Id*.  Plaintiffs here each invested their own personal funds.

In any event, even if their funds never reached Deutsche, as borrowers under

a loan they are "consumers" regarding any attempts to enforce the credit obligation

by subsequent parties such as Deutsche.  *See Flores v. Rawlings & Co.*, 117

Hawaii 153, 162 (2009).

### c. The FAC sufficiently alleges damages and causation.

The FAC sufficiently alleges injury to Plaintiffs and causation by Defendant.

See FAC, ¶¶ 10, 11, 16, 38, 40, 41, 44, 45, 46, 47 and 48.  Again, on a motion to

dismiss, these allegations must be taken as true.  *Sprewell*, at 988.

### 2. The FAC States an Actionable IIPEA Claim.

The FAC states an actionable IIPEA claim.  Deutsche knew that one of

Plaintiffs' options to resolve their defaults was to sell their Properties to private

purchasers.  Through Deutsche's schemes, however, Plaintiffs' Properties were

subjected to forced "distress sales" through non-judicial foreclosures, and said

sales occurred at below-market prices because of the "fire sale" nature of the

transaction.  If Deutsche otherwise had a legal right to foreclose, it did so at times

much earlier than it could have if it had not used the unlawful assignments.  Both deprived Plaintiffs the opportunity to sell to third-parties of their choosing at likely higher prices.[18]  Thus, all of the elements for an IIPEA claim, *see* Doc. 62-1 at 41 citing *Meridian Mortg. Inc. v. First Haw. Bank*, 109 Hawaii 35, 47-48 (Haw. App. 2005), are present.  The absence of these allegations neatly laid out in FAC ¶51 or explicitly tied to the phrase "intentional interference with prospective business advantage" is irrelevant.

### H.    Wrongful Foreclosure Is Recognized in Hawaii.

Lastly, Deutsche dedicates one page to argue that wrongful foreclosure is not actionable in Hawai`i, see Doc. 62-1 at 33, citing *Valencia v. Carrington Mortg. Servs., LLC*, 2013 WL 375643, *6 (D. Haw. Jan. 29, 2013) (LEK).  Again, Deutsche misleads the Court with its application of *Valencia*.  *Valencia* did ***not*** hold that there was no cause of action for wrongful disclosure in Hawaii, just that one had not been expressly recognized under such a term, and Judge Kobayashi based her in that case decision to dismiss not on that, but, rather, on the highly particular facts that (1) there had been no foreclosures of any properties, <u>and</u> (2) substantive wrongful foreclosure claims in other jurisdictions are only available **after** some actual foreclosure.  *Id*.  (In other words, she rejected a tort of

---

[18] Plaintiffs conclude that only one of the their IIPEA claims is timely: Plaintiff Lizza's Property was sold at auction on April 22, 2011 and falls within the two-year statute.  See Bickerton Decl., Ex. "A."  Accordingly, Mauch and Dean agree to leave Plaintiff Lizza to represent the Class on that single claim.

"attempted foreclosure.")  Clearly, that is not the case here; *Valencia* does <u>not</u>

opine on whether there would have been a viable wrongful foreclosure claim had a

completed foreclosure existed.

More accurately, this District ***refused*** to dismiss a claim for wrongful

foreclosure based identical arguments (and closely similar facts involving a New

Century loan), in *Lowther*, *supra*, where Judge Kobayashi stated:

> …  although Hawai'i has not specifically recognized a common law
> wrongful foreclosure cause of action, there are circumstances when a
> wrongful foreclosure claim may exist under Hawai'i law.  …  **This
> Court therefore rejects Defendant's argument that [the wrongful
> foreclosure claim] fails as a matter of law because the Hawai'i
> courts do not recognize a wrongful foreclosure cause of action.**

*Id.*, at **19-20 (emphasis and brackets added) (internal citations omitted).

## V.    CONCLUSION

For all of the above reasons, Deutsche's Motion should be denied.

Dated:  Honolulu, Hawai`i, November 4, 2013.


/s/ *James J. Bickerton*
JAMES J. BICKERTON
STANLEY H. ROEHRIG

Attorneys for Plaintiffs