**BICKERTON LEE DANG & SULLIVAN**
A LIMITED LIABILITY LAW PARTNERSHIP
JAMES J. BICKERTON        3085
STANLEY H. ROEHRIG        664
Topa Financial Center, Fort Street Tower
745 Fort Street, Suite 801
Honolulu, Hawai'i  96813
Telephone:  (808) 599-3811
Email:  bickerton@bsds.com; shroehrig@bsds.com

**AFFINITY LAW GROUP**
RAYMOND C. CHO          8337
VAN-ALAN H. SHIMA 8176
1188 Bishop Street, Suite 3408
Honolulu, Hawaii 96813
Telephone:  (808) 545-4600
Email :  vshima@affinitylaw.com

Attorneys for Plaintiffs
KARL P. LIZZA, GARY L. DEAN and JOHN J. MAUCH
Individually and on behalf of all others similarly situated

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KARL P. LIZZA, GARY L. DEAN, JOHN J. MAUCH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY and DOE DEFENDANTS 1-50, <br><br> Defendants. | CIVIL NO.13-00190 HG-BMK (Class Action) <br><br> **SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBITS "1"-"3" and "A"; CERTIFICATE OF SERVICE** |

## SECOND AMENDED COMPLAINT

Plaintiffs KARL P. LIZZA, GARY L. DEAN and JOHN J. MAUCH,

individually and on behalf of all persons similarly situated, for their Second

Amended Complaint against Defendant DEUTSCHE BANK NATIONAL TRUST

COMPANY (**"Deutsche"**), allege as set out in the following paragraphs.  Plaintiffs

have been required by a court order dismissing their wrongful foreclosure claim

and others with prejudice to refrain from re-pleading those claims in this Second

Amended Complaint.  Plaintiffs have complied with this requirement and have

therefore omitted certain previously asserted claims and allegations from this

amended complaint , but in so doing do not waive their objections to the aforesaid

dismissal and expressly reserve their right to appeal therefrom.  A redlined copy of

this Second Amended Complaint, showing the amendments, additions and

deletions from the First Amended Complaint, is attached as Exhibit "A".

## PARTIES

1.      Plaintiffs KARL P. LIZZA (**"Plaintiff Lizza"**) and JOHN J.

MAUCH (**"Plaintiff Mauch"**) were, at the times complained of herein, residents

of and domiciled in the State of Hawaii.  GARY L. DEAN (**"Plaintiff Dean"**) is a

resident of and domiciled in the State of California, although at the time of the

events complained of with respect to the non-judicial foreclosure of his Hawaii

property, he resided in the State of Hawaii.  Plaintiff Lizza, Plaintiff Mauch and

Plaintiff Dean are referred to herein collectively as **"Plaintiffs"**.

2.      At all material times, Deutsche is and was a national banking

association organized under the laws of the United States of America.  Deutsche's

main office and principal place of business is purported to be located at 300 South

Grand Avenue, Suite 3950, Los Angeles, California 90071.  Deutsche is sued

herein in such capacity as the law permits it to be sued in the circumstances alleged

in this case.  Over objection the Court has limited this complaint to suit against

Deutsche in its "trustee capacity," but Plaintiffs reserve their objection and right to

appeal that ruling.

## CLASS ACTION ALLEGATIONS

3.      Plaintiffs bring this action on behalf of themselves and all others

similarly situated pursuant to Federal Rules of Civil Procedure (**"FRCP"**) Rule 23.

This action satisfies the numerosity, commonality, typicality, adequacy,

predominance and superiority requirements of FRCP Rule 23.

4.      This case arises out of mortgage loans originally made to Plaintiffs

and other Class members and the subsequent effort by Deutsche to foreclose on

said loan without an adequate legal right to do so and/or in a manner that chilled

bidding on the property by failing to provide reasonable warranties that Deutsche

had the right to foreclose, had not done so improperly and had done nothing to

impair title.  Plaintiffs allege that Deutsche engaged in a scheme to acquire and re-sell the Properties of Plaintiff and the Class by (a) using notices of sale that unfairly and deceptively discouraged bidding by failing to advertise any warranties regarding how Deutsche had acquired its interest or conducted the foreclosure while (b) creating false documents designed to persuade its counsel to handle the foreclosures, support the required Affidavit of Foreclosure that was required to show that a "mortgagee" had performed the foreclosure, and enable it to re-sell the Properties at a higher price in the re-sale market.  While each part of the scheme constitutes its own unfair or deceptive act or practice, they were done together as part of a single scheme and each part of the scheme enabled the other.

5.      Plaintiffs bring this case as a class action pursuant to FRCP Rule 23, on behalf of themselves and all others who are similarly situated consisting of:

All owners of Hawaii real property who were subjected to the commencement of non-judicial foreclosure proceedings under HRS Chapter 667, and with respect to said property:

(a)      Prior to or in connection with the foreclosure recorded at the Bureau of Conveyances, State of Hawaii, Deutsche was the assignee of a purported assignment of note and/or mortgage;

(b)      Any one or more of the following was the case at the time of the foreclosure:  (i) the property was registered land court

4

property, (ii) State of Hawaii public records reflect the note

secured by the property was not endorsed, (iii) Deutsche lacked

physical possession of an endorsed note secured by the

property, (iv) Deutsche was unable or unwilling to show such

possession to its own counsel.

(c)     Deutsche purporting to act as a mortgagee caused the sale or

transfer of the property by way of an auction sale purportedly

conducted pursuant to a non-judicial foreclosure under HRS

Chapter 667.

This group is hereinafter referred to as "the Class." The class consists of the

owners of more than 280 properties.

6.     The Class includes a subclass of which Plaintiff Dean and Plaintiff

Mauch are members. The subclass (hereinafter "the Land Court Subclass")

consists of all members of the Class whose title to the property foreclosed by

Deutsche was recorded in Land Court.

7.     Excluded from the Class are: (a) Defendant Deutsche, its subsidiaries,

affiliates, officers, and directors, and any entity in which Deutsche has a

controlling interest; (b) all persons who make a timely election to be excluded; (c)

governmental entities; and (d) all judges assigned to hear any aspect of this

litigation, as well as their immediate family members.

8.      Since August 1, 2008, more than 280 Hawaii properties were subjected to non-judicial foreclosure proceedings by Deutsche using a purported power of sale and purported "assignments" recorded at the Hawaii Bureau of Conveyances ("BOC") wherein the Property was either land court property or Deutsche's recorded Affidavit of Foreclosure attested that it was the holder of an unendorsed note.

9.      The mortgages and notes of Plaintiffs and other members of the Class were all created prior to August 1, 2008 and the original lenders or payees under those notes had assigned these notes and mortgages to parties other than Deutsche in the years prior to 2008.  Thus, on and after August 1, 2008 the original lenders owned no interest in Plaintiffs' notes and mortgages and had nothing to assign in relation thereto.

10.     Plaintiffs and the other members of the Class have standing as persons injured by the unfair and deceptive scheme and acts described herein to challenge the conduct of Deutsche, as well as to challenge the authority, title and ownership of any purported assignor of their notes or mortgages to make any assignment that Deutsche used or relied on in the process of taking title to and possession of the properties of Plaintiffs and the Class.

11.     The members of the Class are sufficiently numerous that joinder of all members in a single action is impracticable.  Nearly all of the members of the

Class resided in the State of Hawaii at the time their properties were wrongfully foreclosed, and at least 67% reside in and are domiciled in the State of Hawaii presently.

12.    A class action is appropriate in this case for one or more of the following reasons:

(a)    The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, the amount at stake for many of the Class members, while not insignificant, is not great enough to enable each of them to maintain separate suits against Defendant Deutsche, one of the largest corporations in the world.

(b)    Deutsche has acted on grounds generally applicable to the Class, making appropriate declaratory relief with respect to the Class as a whole as set forth below.

13.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of

the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Among the questions of law and fact common to the named Plaintiffs and the Class are, *inter alia:*

(a)    Whether Deutsche was required by either the land court statute or the Hawaii UCC to possess a written assignment instrument relating to either the note or the mortgage or both;

(b)    Whether, in circumstances where Hawaii statutes required the possession or recordation of a written assignment, an assignment instrument purporting to assign the note and/or mortgage to Deutsche executed by an entity that had previously assigned all of its interest to a party other than Deutsche is false, unlawful or otherwise unauthorized;

(c)    Whether a non-judicially foreclosing entity that is unable to produce an endorsed note or unwilling to provide same to its counsel may instead record a false assignment instrument purporting to assign the note and/or mortgage to itself;

(d)    Whether Deutsche, by reason of the above, had a legal right to foreclose on Class members;

(e)    Whether Plaintiffs and the Class members are "consumers" within the meaning of HRS Section 480-1 for purposes of the claims alleged herein;

(f)     Whether Deutsche's above-described conduct of using false assignments where the law or its counsel required it to have a written assignment is unfair or deceptive within the meaning of HRS § 480-2;

(g)     Whether Defendant Deutsche and its agents, when acting in the claimed capacity of a foreclosing mortgagee under power of sale, had a duty to use good faith efforts to secure the best advantage for members of the Class in the sale of their properties under a power of sale in their mortgages, including securing the best possible price;

(h)     Whether under Hawaii law a power of sale in a mortgage creates a power of attorney or other agent-principal relationship between the mortgagor and mortgagee with respect to the sale of the mortgagor's property;

(i)     Whether Defendant Deutsche and its agents, when acting in the claimed capacity of a foreclosing mortgagee under power of sale, had a duty to offer the properties in question on terms at least as good as Deutsche would offer when selling them for its own account;

(j)     Whether Defendant Deutsche and its agents, when acting in the claimed capacity of a foreclosing mortgagee under power of sale, breached its duties as the claimed holder of the power of sale by offering in the Notice of Intention to Foreclose to convey the properties of members of the Class to the high bidders at auction by a mere quitclaim deed and/or without any covenants or

9

warranties of title such as warranties that Deutsche was authorized to foreclose, had properly conducted the foreclosure and had not done or suffered to be done any act impairing title , notwithstanding (1) that the pledged properties to be auctioned otherwise had warrantable and marketable title, (2) that Deutsche routinely delivered deeds with such warranties to third-party successful auction bidders thereby making the Notice false and deceptive; and (3) that after acquiring the properties for its own account, Deutsche regularly resold them with limited warranty deeds.

(k)     Whether Deutsche offering real property for sale at non-judicial foreclosure auctions by quitclaim deed and/or without any covenants or warranties of title reduced the pool of prospective buyers and the overall demand for the properties and thus reduced the amount willing buyers were prepared to pay at public auctions conducted under power of sale;

(*l*)     Whether Deutsche's notices of sale offering only quitclaim deeds without  any warranty that it (i) had the right to foreclose, (ii) had done so in accordance with the power of sale and the law or (iii) had not done any act to impair the title conveyed, were "unfair" or "deceptive" within the meaning of HRS Section 480-2;

(m)     Whether Deutsche's use of quitclaim deeds without such warranties harmed the class members on a class wide basis;

(n)     The nature and extent of class-wide injuries and the measure of damages for the injuries.

14.     Plaintiffs' claims are typical of the claims of other Class members, in that their claims arise out of the same non-judicial foreclosure policies and practices repeatedly and routinely performed by the Deutsche in connection with its foreclosure of  notes and mortgages in Hawaii .  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

15.     Plaintiffs are committed to the vigorous prosecution of this action. Plaintiffs know of no conflicts of interest among members of the Class.

16.     Plaintiffs have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers in this jurisdiction.  The Class will therefore be represented by counsel who can adequately represent the interests of the entire Class.

17.     Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

18.     Class action treatment is superior to the alternatives for the fair and efficient adjunction of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single action simultaneously, efficiently, and without duplication of the expenses

that numerous individual actions would entail.  No difficulties are likely to arise in the management of this class action that will preclude its purpose as a class action, and no superior alternatives exist for the fair and efficient adjunction of this controversy.  Without a class action, Deutsche will likely retain the benefit of its wrongdoing and may continue the course of its actions, which could result in further damages.

19.     Databases are maintained by Deutsche or its agents which include foreclosure victims' names and addresses and the dates on which Deutsche carried out its foreclosure proceedings.  Other databases maintained by government entities reflect the commencement and conclusion of foreclosure proceedings, and the sale of the properties in question.  Thus, records are readily available for purposes of identifying all members of the Class and providing notice of the instant class action to all Class members and determining the nature and size of each member's claim.

## **ALLEGATIONS OF WRONGDOING AND DAMAGE**

19.     Plaintiff Lizza's amended claim rests on the following newly alleged facts:

(A)     Lizza's Property was registered Land Court property and Deutsche lacked possession of and the ability to present to its counsel a duly endorsed note from Lizza when it foreclosed on Plaintiff Lizza' s

12

Property and therefore lacked any right to enforce the note or the related mortgage and,

(B)  Even if Deutsche had the right generally to sell Plaintiff's Lizza's Property under the power of sale, it did so without offering the public any warranty that it had such a right or any warranty that it had conducted the sale in accordance with the law and the power of sale, conduct which served to unfairly and deceptively chill the bidding at the auction and thereby allowed Deutsche unfairly to acquire Plaintiff Lizza's property for itself.

20.  Plaintiff Mauch's amended claim rests on the following newly alleged facts:

(A)  Mauch's Property was registered Land Court property and Deutsche lacked possession of and the ability to present to its counsel a duly endorsed note from Mauch when it foreclosed on Plaintiff Mauch's Property and therefore lacked any right to enforce the note or the related mortgage and,

(B)  Even if Deutsche had the right generally to sell Plaintiff's Mauch's Property under the power of sale, it did so without offering the public any warranty that it had such a right or any warranty that it had conducted the sale in accordance with the law and the power of sale,

conduct which served to unfairly and deceptively chill the bidding at

the auction and thereby allowed Deutsche unfairly to acquire Plaintiff

Mauch's property for itself.

21.     Plaintiff Dean's amended claim rests on the following newly alleged

facts:

(A)     Deutsche lacked possession of and the ability to present to its counsel

a duly endorsed note from Dean when it foreclosed on Plaintiff Dean'

s Property and therefore lacked any right to enforce the note or the

related mortgage and,

(B)     Even if Deutsche had the right generally to sell Plaintiff's Dean's

Property under the power of sale, it did so without offering the public

any warranty that it had such a right or any warranty that it had

conducted the sale in accordance with the law and the power of sale,

conduct which served to unfairly and deceptively chill the bidding at

the auction and thereby allowed Deutsche unfairly to acquire Plaintiff

Dean's property for itself.

22.     Plaintiff Lizza was the owner of real property located at 75-5776

Kuakini Highway #316, Kailua-Kona, Hawaii 96740 (**"Plaintiff Lizza's**

**Property"**).  Plaintiff Lizza's Property was at all relevant times "land court

14

property" registered in the Land Court under HRS Chapter 501 and subject to the requirements of that statute.

23.     Plaintiff Mauch was the owner of real property located at 47-059 A Lihikai Drive, Kaneohe, Hawaii 96744 (**"Plaintiff Mauch's Property"**). Plaintiff Mauch's Property was at all relevant times "land court property" registered in the Land Court under HRS Chapter 501 and subject to the requirements of that statute.

24.     Plaintiff Dean was the owner of real property located at 75-313 Aloha Kona Drive, Kailua-Kona, Hawaii 96740 (**"Plaintiff Dean's Property"**).

25.     The above-described properties previously owned by Plaintiffs and Class members shall collectively be referred to herein as the **"Properties."**

26.     Plaintiff Lizza's Property was mortgaged as security for a loan from New Century Mortgage Corporation ("New Century") in the amount of $76,000. The Mortgage reflecting this indebtedness and security was executed by Plaintiff Lizza on or about October 28, 2004, and was thereafter recorded in the Hawaii Bureau of Conveyances by or on behalf of New Century on or about November 4, 2004.

27.     Because Plaintiff Lizza's property was Land Court property, Plaintiff Lizza's title was noted and reflected on the Transfer Certificate of Title ("TCT") and recorded with the registrar of Land Court, State of Hawaii.  As such it was

subject to and governed by the provisions of Chapter 501 of the Hawaii Revised Statutes.

28.     Plaintiff Mauch's Property was mortgaged as security for a loan from New Century in the amount of $460,000.  The Mortgage reflecting this indebtedness and security was executed by Plaintiff Mauch on or about April 12, 2005, and was thereafter recorded in the Hawaii Bureau of Conveyances by or on behalf of New Century on or about April 22, 2005.

29.     Because Plaintiff Mauch's property was Land Court property, Plaintiff Mauch's title was noted and reflected on the TCT and recorded with the registrar of Land Court, State of Hawaii.  As such it was subject to and governed by the provisions of Chapter 501 of the Hawaii Revised Statutes.

30.     Plaintiff Dean's Property was mortgaged as security for a loan from New Century in the amount of $566,400.  The Mortgage reflecting this indebtedness and security was executed by Plaintiff Dean on or about December 7, 2006 and was thereafter recorded in the Hawaii Bureau of Conveyances by or on behalf of New Century on or about December 14, 2006.

31.     On or about April 2, 2007, New Century TRS Holdings, Inc., together with its affiliates, New Century Mortgage Corporation and Home 123 Corporation, filed bankruptcy proceedings in Delaware.  A trustee in liquidation (**"the Trustee"**) was appointed by the bankruptcy court by order effective August 1,

2008.  By court order, as of that date, the Liquidation Trustee became the sole

owner of any remaining assets held by New Century or Home 123, and from and

after August 1, 2008, no person or entity other than the Trustee had any power to

transfer, assign, convey or otherwise dispose of any asset, title or interest, legal or

equitable, of Home 123 or New Century.

### COUNT I – UNFAIR AND DECEPTIVE ACTS AND PRACTICES UNDER HRS CHAPTER 480 FOR FORECLOSING LAND COURT PROPERTY AND OTHER PROPERTY WHERE (1) DEUTSCHE LACKED POSSESSION OF AN ENDORSED NOTE OR RELIED ON AN UNENDORSED NOTE  OR (2) HAWAII LAW OTHERWISE REQUIRED THE EXISTENCE, REGISTRATION OR RECORDATION OF A WRITTEN ASSIGNMENT

32.     On or prior to September 15, 2010, Deutsche caused an "assignment"

of the Mortgage on Plaintiff Lizza's Property, "together with certain note(s)

described" relating thereto, to be prepared by its agents.  The assignment purported

to be from New Century to Deutsche and was signed purportedly on behalf of New

Century by "Greg Schleppy," a person who was in fact an agent of Deutsche and

who falsely claimed to be authorized to sign on behalf of New Century.  A true and

correct copy of said "Assignment of Mortgage" for Plaintiff Lizza's Property (Doc.

No. 4006464) is attached hereto as **Exhibit "1."**

33.     On or prior to January 19, 2009, Deutsche caused an "Assignment of

Mortgage and Note" relating to Plaintiff Dean's Property to be prepared by its

agents.  The assignment purported to assign both the Note and the Mortgage and

purported to be from MERS "as nominee" for New Century to Deutsche and was signed purportedly on behalf of "MERS as nominee for New Century" by a person who was in fact an agent of Deutsche and who falsely claimed to be authorized to sign on behalf of the assignor.  A true and correct copy of said "Assignment of Mortgage and Note" for Plaintiff Dean's Property (Doc. No. 2009-008391) is attached hereto as **Exhibit "2."**  MERS no longer had any authority as a nominee of New Century and Deutsche was not a "successor" to New Century because it lacked possession of an endorsed note and, MERS  thus did not have authority to assign the note and mortgage in question.

34.     On or prior to November 10, 2009, Deutsche caused an "Assignment of Mortgage and Note" relating to Plaintiff Mauch's Property to be prepared by its agents.  The assignment purported to assign both the Note and the Mortgage and purported to be from New Century to Deutsche and was signed purportedly on behalf of New Century by a person who was in fact an agent of Deutsche and who falsely claimed to be authorized to sign on behalf of New Century as the assignor of the assigned interest.  A true and correct copy of said "Assignment of Mortgage and Note" for Plaintiff Mauch's Property (Doc. No. 3915646) is attached hereto as **Exhibit "3."**

35.     New Century assigned all of its right title and interest in the Lizza note and Lizza mortgage to "New Century Credit Corporation" on or before

December 16, 2004.  New Century Credit Corporation may have made a further assignment of the note and mortgage, but if so, it was to an entity other than Deutsche.

36.     Thereafter, Lizza defaulted on his payment obligation under the note.

37.     Deutsche has claimed to the beneficiaries of the trust that purported to own the Lizza note and mortgage that it owned the Lizza note and mortgage through a series of assignments, the last of which was from "New Century Mortgage Securities LLC" to Deutsche.  New Century Mortgage Securities LLC was a separate and distinct company from New Century Credit Corporation and both were separate and distinct from New Century Mortgage Corporation, the originating lender.

38.     Deutsche failed to record any of the assignments that preceded its claimed acquisition of the Lizza note and mortgage.

39.     Deutsche, believing itself and its trust beneficiaries entitled to the payments under the note, and desiring to acquire Lizza's property for itself to re-sell it and use the proceeds to satisfy the beneficiaries, decided to foreclose on the Lizza mortgage and use the foreclosure process to acquire title to and re-sell Lizza's home.

40.     New Century assigned all of its right title and interest in the Mauch note and Mauch mortgage to Carrington Securities, LP on or before August 16,

19

2005.   Carrington Securities LP may have made a further assignment of the note and mortgage, but if so, it was to an entity other than Deutsche.

41.     Thereafter, Mauch defaulted on his payment obligation under the note.

42.     Deutsche has claimed to the beneficiaries of the trust that purported to own the Mauch note and mortgage that it owned the Mauch note and mortgage through a series of assignments, the last of which was from "Stanwich Asset Acceptance Company, LLC" to Deutsche.  Stanwich Asset Acceptance Company, LLC was a separate and distinct company from Carrington Securities, LP and both were separate and distinct from New Century, the originating lender.

43.     Deutsche failed to record any of the assignments that preceded its claimed acquisition of the Mauch note and mortgage.

44.     Deutsche, believing itself and its trust beneficiaries entitled to the payments under the note, and desiring to acquire Mauch's property for itself to re-sell it and use the proceeds to satisfy the beneficiaries, decided to foreclose on the Mauch mortgage and use the foreclosure process to acquire title to and re-sell Mauch's home.

45.     New Century assigned all of its right title and interest in the Dean note and Dean mortgage to "NC Capital Corporation" on or before May 31, 2007.

46.     Thereafter, Dean defaulted on his payment obligation under the note.

47.     Deutsche has claimed to the beneficiaries of the trust that purported to own the Dean note and mortgage that it owned the Dean note and mortgage through a series of assignments, the last of which was from "Morgan Stanley ABS Capital, Inc." to Deutsche.  Morgan Stanley ABS Capital, Inc. was a separate and distinct company from NC Capital Corporation and both were separate and distinct from New Century, the originating lender.

48.     Deutsche failed to record any of the assignments that preceded its claimed acquisition of the Dean note and mortgage.

49.     Deutsche, believing itself and its trust beneficiaries entitled to the payments under the note, and desiring to acquire Dean's property for itself to re-sell it and use the proceeds to satisfy the beneficiaries, decided to foreclose on the Dean mortgage and use the foreclosure process to acquire title to and re-sell Dean's home.

50.     Similar conduct by Deutsche took place with respect to each Class member.

51.     At the point in time when it purported to take "assignment" of Plaintiffs' notes and mortgages and the notes and mortgages of other members of the Class directly from the originating lender, Deutsche knew that that the assigning entity had nothing to assign and that the persons executing the assignments had no authorization to do so.

52.     The instrument creating the trusts through which Deutsche purported to own the notes and mortgages of the class represented and promised to the beneficiaries of the trusts that Deutsche had also represented to others that it had acquired the notes and mortgages from "Depositors" or entities other than the originating lenders who had first loaned money to Plaintiffs and the other members of the Class.  Thus, Deutsche was aware that assignments purportedly from the originating lenders or their nominees directly to Deutsche were (a) contrary to what it had represented to others as the true state of affairs, (b) made by an entity with no present interest in the note and mortgage and hence no capacity to assign the note and mortgage and (c) not "confirmatory" of an earlier assignment by some other third party to Deutsche.  Receipt of and use of an assignment in these circumstances was therefore not simply that of a passive, innocent and bona fide assignee, but rather the act of a knowing participant in a false and deceptive scheme.

53.     After creating the above-described false and deceptive assignments, Deutsche, through its attorney agents, caused the "assignment" of Plaintiffs' notes and mortgages to be recorded in the State of Hawaii Bureau of Conveyances on February 9, 2011 (Plaintiff Lizza's Property), January 22, 2009 (Plaintiff Dean's Property) and November 16, 2009 (Plaintiff Mauch's Property).  For Lizza and Mauch, as well as all Subclass members (i.e. those who who held title to their

foreclosed property as registered Land Court property), the putative assignments from the originating lender to Deutsche were also registered under the Land Court registration process described in HRS Chapter 501.

54.    Similar conduct by Deutsche took place with respect to the recordation of the assignment of notes and mortgages of the each member of the Class.  All of these recordations of purported assignments of notes and mortgages took place at the office of the State of Hawaii Bureau of Conveyances, located in Honolulu, in the First Circuit of the State of Hawaii.  Each recordation constituted a criminal act in violation of Hawaii law and the public policy against the issuance and recordation of forged and false written instruments relating to real property.  HRS § 708-852(1) provides in part: "A person commits the offense of forgery in the second degree if with intent to defraud … falsely makes a written instrument … which purports to … [be an] assignment … affect[ing] a legal right …(.)"

55.    The attorney agents through whom Deutsche acted to foreclose on Plaintiffs and the Class members purportedly under HRS § 667-5 (2008) were required to be used by state law.  All such lawyers following their professional responsibility duties under HRPC Rules 3.1 and 4.1 would have required Deutsche to show them that Deutsche either possessed an endorsed note or had a written assignment of the note and, in the cases of land court property, had a written assignment of mortgage registered as required by Chapter 501, HRS.

23

56.     Furthermore, because the attorneys who conducted Plaintiffs'
foreclosures were required by Deutsche to prepare and execute the recorded
Affidavits of Foreclosure following the auction sale, they would have required
some evidence of who "the mortgagee" was before preparing an affidavit attesting
that the "mortgagee" had performed certain acts.  For these reasons, one or more of
these instruments (an endorsed note or a written assignment of the note and/or
mortgage) was therefore required in order for Deutsche to carry out its scheme to
sell at auction and thereby acquire the Properties of Plaintiffs and the Class
members.

57.     HRS Section 501-116 provides that: "The owner of any interest in
registered land may mortgage the interest by executing a mortgage thereof.  Such a
mortgage may be assigned, extended, discharged, released in whole or in part, or
otherwise dealt with by the mortgagee by any form of instrument sufficient in law
for the purpose.  Except as provided in part II, the mortgage, and ***all instruments
assigning***, extending, discharging, and otherwise dealing with the mortgage, ***shall
be registered*** and shall take effect upon the title of the mortgaged property ***only
from the time of registration***."  (Emphasis added).

58.     By virtue of this law, both statute and Hawaii public policy required
that any assignment of a mortgage on land court property be duly recorded and
registered in accordance with Chapter 501 and further required that said

24

assignment would not take effect unless and until it was so registered.  Thus, unless and until an assignment from the originating lender/mortgagee who first recorded the mortgage was duly registered, the Land Court system would not recognize any mortgagee other than the original lender/mortgagee.

59.    Furthermore, the Properties would not have marketable title from which Deutsche could derive sufficient proceeds unless the BOC or TCT showed an unbroken chain from the originating lender to the foreclosing mortgagee.   Such marketable title was therefore a necessary part of Deutsche's scheme and hence recordation of the assignments was an integral part of Deutsche's scheme to sell the Properties to itself for re-sale.

60.    In 2005-2007 New Century and other originating lenders routinely failed to endorse the notes that they received from borrowers and thereafter purported to transfer to entities in the securitization process (entities other than Deutsche).  This allegation is plausibly confirmed by the fact that the vast majority of notes to New Century and other originating lenders issued from 2005 and 2007 that were made part of the record at the BOC between 2008 and 2011 by Deutsche and other putative assignees, certified there as true copies of the original, and used and relied on by Deutsche as evidence of its claimed status as a "holder" of the note, lacked endorsements in blank or endorsements to Deutsche.

61.     Indeed, one of the Plaintiffs in this case – Plaintiff Dean – presents a plain example of this practice.  In Dean's case, Deutsche recorded an Affidavit of Foreclosure on July 6, 2009 in which it (a) presented a "certified as true" copy of Dean's note recorded at the BOC and (b) represented that this was the note of which it was "the holder", yet the instrument contained no endorsement of any kind.  Based on this, Plaintiffs allege that Deutsche did not possess an endorsed note at the time it foreclosed on Dean and therefore lacked the right to foreclose.  Furthermore, having taken Dean's Property through the use of an Affidavit stating under oath that Deutsche was the "holder" of an ***unendorsed*** note, Deutsche is now estopped from claiming otherwise as to Dean.

62.     Under then-applicable law the Affidavit of Foreclosure must be the affidavit of a mortgagee or the authorized agent of a mortgagee.  Thus, in order to effectively convey title to Deutsche (or to third-party auction purchasers in the small minority of cases with such purchasers) the Affidavit had to be the affidavit ***of a mortgagee*** and thus impliedly was required to demonstrate on its face that the affiant was the mortgagee or an authorized agent of the mortgagee, otherwise it necessarily would fail to show that "the mortgagee" had done the necessary acts.

63.     Deutsche could not satisfy this requirement by merely attaching an unendorsed note and having the affiant claiming to be its holder, and therefore in order to complete its non-judicial foreclosure it needed either to show in the

26

Affidavit that it held an endorsed note or to reference the record title in a way that would demonstrate that it was an assignee of the note and mortgage (e.g. by citing a mortgage recording number which the BOC record would show had been assigned to Deutsche).

64.     Thus, regardless of whether Deutsche had to show the mortgagor a note or an assignment as a prerequisite to commencing foreclosure, because of the need for the Affidavit to show "the mortgagee's" acts, the law effectively required Deutsche to show in the public record that it was in fact the duly authorized mortgagee before it could conclude the foreclosure process and effectively deprive Plaintiffs and the other Class members of their title.

65.     Plaintiffs' counsel have examined all of the non-judicial foreclosures in Hawaii since 2008  in which Deutsche purported to foreclose on a note and mortgage originally held by New Century or Home 123.   There are over 90 such foreclosures but only in 36 of them did Deutsche record a copy of the note of which it claimed to be a "holder".   Deutsche did not record a copy of Lizza's or Mauch's note at the time of foreclosure as it did with Dean, but based on Plaintiffs' examination of the 36 Deutsche foreclosures where the "certified as true" copy of a New Century or Home 123 note was presented and filed in the BOC, *34 of them are unendorsed*.  Accordingly, Plaintiff is informed and believes, and on that information plausibly alleges, that Deutsche did not possess an endorsed copy of

the Lizza note or the Mauch note at time it recorded the Affidavit of Foreclosure and was unable to present an endorsed note to the counsel it was using to conduct the foreclosure.

66.     Regardless of whether the law required Deutsche to record at the BOC or present Plaintiffs or the public with the papers (e.g., an endorsed note or a duly executed assignment of note or mortgage from a proper entity with something to assign) to support its claim of entitlement to foreclose, the attorneys retained by Deutsche would have required such proof from Deutsche to them as part of their professional responsibilities before initiating the proceeding or, at a minimum, before filing the Affidavit of Foreclosure and, on information and belief based on the facts set forth above, Deutsche was unable to provide those attorneys with a duly endorsed note in the cases of Plaintiffs and the other members of the Class.

67.     .Deutsche was well aware that it could sell property for more in the secondary re-sale ("REO") market than the amount it was prepared to bid at any auction and therefore preferred to sell the property under conditions where it would be the sole bidder.  The plausibility of this allegation is confirmed by the fact that of the more than 600 properties Deutsche foreclosed non-judicially between July 2008 and July 2011, 96% were bought by Deutsche a higher rate than for judicial sales in the same period), and Deutsche recovered approximately $10 million more

from reselling those properties as REO than it bid at the auctions of those properties.

68.     At the time of Plaintiffs' foreclosures Deutsche lacked physical possession of duly endorsed notes from Plaintiffs because New Century had not endorsed the notes or had not transferred possession of endorsed notes to Deutsche. Regardless of whether Deutsche actually had physical possession of the note the time it sought to foreclose (a fact not yet known), the notes that Deutsche possessed and showed to its own attorneys were not endorsed either to Deutsche or in blank.

69.     Similar conduct by Deutsche occurred with respect to the other members of the Class.

70.     Under Hawaii UCC law, the physical possessor of an unendorsed note may not enforce it without a proving the transaction through which the transferee acquired the note, e.g., by showing the separate written instrument assigning the note or the right to enforce it.  *See, e.g.,* HRS Section 490:3-203 (Commentary Para. 2).

71.     As a result of the foregoing facts, Deutsche required an assignment instrument assigning at least the note itself in order to be a person entitled to enforce the note and thus foreclose on Plaintiffs and the other Class members.

72.     For Plaintiffs Lizza and Mauch, as well as all other members of the Subclass, because their property was registered land court property, Hawaii law and public policy also required each mortgagee to record each mortgage in land court.

73.     Because the property of Lizza, Mauch and the other Subclass members was registered land court property, the law and public policy also required that any assignment of the mortgage be registered and recorded and *prohibited any assignment of a mortgage on such property from taking effect* until so registered.

74.     In order to induce a licensed Hawaii attorney to represent it in a foreclosure, as required by Hawaii law, Deutsche required some evidence to show the attorney that it lawfully had the right to foreclose, either by (1) possession of *an endorsed* note or a duly executed assignment of the note or (2) a duly executed assignment of the mortgage, or both.

75.     Deutsche knew a written assignment of each note was required by the UCC for all properties where it could not present an endorsed note and an assignment of the mortgage was required by al properties subject to the land court statute (HRS Section 501-116), but did not want to or could not create, locate or record each of the assignments by which it had told the trust beneficiaries it had acquired the mortgage or physical possession of the unendorsed note.

76.     Rather than create, locate and/or record each of the assignments in its claimed series of assignments, Deutsche chose to follow a false, unethical and unlawful shortcut and record an instrument purporting to be an assignment of the note and mortgage from the originating lender, who in fact could not lawfully assign anything because of its prior assignment to a third party other than Deutsche.

77.     By doing this, Deutsche could also secure the services of a licensed Hawaii attorney (which Hawaii law required for a non-judicial foreclosure) who would otherwise decline the representation or be unable to sign the required Affidavit of Foreclosure if Deutsche did not present either an endorsed note or a written assignment of the mortgage suitable for recording in the Land Court system.

78.     The registration and recording of Deutsche's false assignment instruments in the Land Court was a direct violation of Hawaii law and public policy.

79.      Deutsche's recording of false assignment documents created a cloud on the title to the Properties of Plaintiffs and the other Class members and impaired the value of the Properties.  This cloud and impairment was one that Deutsche was not entitled to create because it lacked any other assignment instrument entitling it

to enforce the unendorsed note and could not claim the rights of a mortgagee in any other way.

80.     Potential buyers of property in Hawaii were well aware that assignments purporting to be from originating lenders to the trustees of securitized trusts were only recorded in Hawaii when foreclosure was imminent, and would therefore believe that a distress sale with a below market price was about to happen.  Thus the mere fact of the recording of the false assignment instrument, without more, impaired the value of the properties and the ability of Plaintiffs and the other members of the Class to sell their property on the open market.

81.     Deutsche completed the foreclosure process for each Plaintiff and member of the Class, thereby effectively depriving each Plaintiff and Class member of title to and possession of their property by executing through an agent and recording an Affidavit of Foreclosure and delivering a deed to the auction purchaser.  In each Affidavit of Foreclosure, Deutsche represented either expressly or impliedly that it was the mortgagee and entitled to foreclose under the power of sale.  For the reasons stated above, these statements and status in the Affidavit of Foreclosure were not true.

82.     In all cases where Deutsche actually recorded unendorsed notes and claimed in its recorded Affidavit of Foreclosure to be the holder of an unendorsed note it is now estopped from claiming that it had an endorsed note by virtue of the

fact that it used and relied on the Affidavit to gain title to and possession of the property and re-sell same.

83.    Plaintiffs and the other members of the Class were harmed by the conduct alleged above because they lost their property to an entity that was not entitled to sell their property to itself or anyone else at the time of the sale because it lacked both possession of an endorsed note and a valid written assignment of the note and mortgage.

84.    Even if Deutsche could have located or created recorded instruments from the persons who it told its beneficiaries had preceded it in the chain of title to the notes and mortgages of Plaintiffs and the other members of the Class, it could not have done so in the time period in which it conducted the foreclosure.

85.    Thus, at a minimum, Plaintiffs and the other Class members were deprived unlawfully of many months of possession and use of their property even if Deutsche could have obtained the required instruments at some other time.

86.    All of the foregoing conduct was "deceptive" within the meaning of HRS Section 480-2.  The foregoing conduct was also "unfair" within the meaning of Section 480-2 because it was (a) offensive to one or more established public policies, (b) unethical, oppressive or unscrupulous, or (c) substantially injurious to consumers.

87.     Deutsche commenced non-judicial foreclosure proceedings against Plaintiffs and their Properties purportedly pursuant to the law then in effect under HRS Chapter 667.  Similar conduct by Deutsche took place with respect to each member of Class.  All of these foreclosures involved the use of the unauthorized, improper, void *ab initio*, unfair and deceptive assignment of a notes and mortgages after August 1, 2008 to, *inter alia*:

(a)     Purportedly establish Deutsche as a mortgagee qualified to use the non-judicial foreclosure procedure when in fact it lacked such status by virtue of the facts alleged above;

(b)     Purportedly create an unfair and deceptive "chain of title" in the official state records which would purportedly show Deutsche as having the ability to convey title by virtue of the foreclosure when in fact it lacked such ability by virtue of the facts alleged above;

(c)     Unfairly and deceptively give the published notice of foreclosure sale required by Chapter 667 an appearance of having been published by an entity with the legal right and title to foreclose;

(d)     Conceal or obscure the fact that Deutsche lacked possession of an endorsed note, could not or would not present same to its counsel and/or had failed to comply with the requirements of HRS Section 501-116

34

(e)     Accelerate the foreclosure process and the acquisition of the properties of Plaintiffs and the Class members, and otherwise prevent delays that would naturally have arisen from efforts to foreclose by actually acquiring and registering written assignments of the notes and mortgages from the persons or entities to whom the originating lender/mortgagee had actually assigned same.

88.     By virtue of the facts alleged herein, Deutsche lacked the right to foreclose on Plaintiffs and the other members of the Class.  Without the above-described advantages obtained by Deutsche through its wrongful use of null, void, false and deceptive BOC-recorded and/or TCT-recorded assignments, Deutsche would have been unable at the time it foreclosed on Plaintiffs and the members of the Class to demonstrate the existence of its right to foreclose.

89.     Deutsche's knowing use and recordation as aforesaid of null, void, false and deceptive "assignments" aided and facilitated the non-judicial foreclosure process for Deutsche which would have been impossible to perform at the time Deutsche performed it.   Deutsche at all relevant times knew and intended that the conduct described herein would cause Plaintiffs and the members of the Class to lose possession of and title to their properties.

90.     Deutsche's use as aforesaid of null, void, false and deceptive "assignments" to effectuate the acquisition through non-judicial foreclosure and sale or re-sale of Plaintiffs' and the Class members' properties was unfair and

35

deceptive within the meaning of HRS Chapter 480.  Furthermore, it was a

substantial factor in causing, and a legal cause of, the involuntary foreclosure sale

of Plaintiffs' Properties and Plaintiffs' resulting loss of title to and possession of

their Properties (and the foreclosure sales and property loss for each member of the

Class).

91.     As a direct and proximate result of the wrongful acts described herein,

Plaintiffs and the other members of the Class have been actually harmed and

injured in that they lost possession and occupancy of their real property and homes.

Said properties were subjected to sale through the non-judicial foreclosure process

and said sales occurred at below-market prices because of the "distress sale" nature

of the transaction.

92.     As a direct and proximate result of the wrongful acts described

herein, Plaintiffs and the other members of the Class:  (1) lost the net equity in

their properties or otherwise had their net worth decreased or worsened by the sale

of their property in a distress sale system, as measured by the difference between

the fair market value of the property and the price at which it was wrongfully

auctioned by Defendant Deutsche;  (2) lost the use of their properties from and

after the date they lost possession by virtue of the foreclosure sale up until the date

of judgment, which lost use should be measured by the fair market rental value for

the period of lost use, and (3) incurred expenses in moving and relocating, all in amounts to be proved at trial.

**COUNT II – UNFAIR OR DECEPTIVE ACTS AND PRACTICES IN OFFERING PLAINTIFFS' AND CLASS MEMBERS' PROPERTIES FOR SALE BY QUITCLAIM DEED WITHOUT ANY WARRANTY THAT DEUTSCHE (1) WAS ENTITLED TO FORECLOSE, (2) HAD CONDUCTED THE FORECLOSURE IN COMPLIANCE WITH THE POWER OF SALE AND THE LAW, AND (3) HAD NOT DONE ANY ACT TO IMPAIR TITLE**

93.     Plaintiffs repeat and re-allege all prior allegations.

94.     The power of sale in each mortgage of Plaintiffs and members of the Class was in the nature of a power of attorney or agency, required the seller to safeguard the mortgagor's surplus and minimize any deficiency.

95.     Accordingly, to the extent deutsche claimed to be the mortgagee, law and established public policy required Deutsche to sell the properties of Plaintiffs and the other Class members on the best reasonable terms and conditions to get the best price to the benefit of both the beneficial owner of the Note and Mortgage as well as the mortgagors, and not to subvert or sabotage the mortgagors' interests in the process.

96.     After recording the false assignment document from an entity that had nothing to assign to Deutsche when it purported to execute the instrument, Deutsche then in each case recorded and published a notice of intention to

foreclose under the power of sale (hereinafter generally "the Notice"), announcing an auction sale of the Properties of the Plaintiffs and other members of the Class.

97.     In each Notice, Deutsche further depressed the interest of potential buyers by offering only a quitclaim deed and stating that it would in effect decline to warrant to buyers that it had properly acquired its right to sell under the power of sale or that it had carried out the power of sale in accordance with law.  The Notice thus in effect told buyers that they would buy at their own risk that Deutsche was in fact the mortgagee and the Deutsche had followed the requirements of the law and the power of sale in carrying out the mortgage and had done nothing to diminish or impair the title.

98.     This allegation that failure to make such a warranty decreased buyer interest is plausible in light of the many buyers in Hawaii who found themselves in litigation with mortgagors or the foreclosing bank over whether the bank had been entitled to sell or had conducted the sale lawfully.  In such an environment, a quitclaim deed offered buyers little comfort and a limited warranty deed from Deutsche would have been of material value to buyers.  The reduced interest of buyers in Deutsche's non-judicial auctions is further reflected in the fact that judicial auctions, which do not subject buyers to the foregoing risks described in the preceding paragraph, produce a substantially higher rate of sales to third parties than Deutsche's "quitclaim only" non-judicial sales.

99.     Such a warranty (referred to herein as a limited warranty deed) was in any event required by the common law and public policy requiring Deutsche to use reasonable efforts to get the best price given that (a) in a substantial number of its few sales to third parties, Deutsche actually *did* grant limited warranty deeds and so it was reasonable for it to offer such warranties on the sale of the properties of Plaintiffs and the members of the Class and (b) Deutsche had failed to comply with the land court recording statute in those cases involving land court property, was unable or unwilling to show the public that it held endorsed notes entitling it to enforce the note and was offering as its evidence of title a written assignment of mortgage from an entity that had nothing to assign on the date of assignment.

100.    Where Deutsche did not deign to show the public an endorsed note or a proper assignment chain from an entity that had something to assign, the duty of a foreclosing entity under a putative power of sale to act fairly and reasonably to protect the interest of the mortgagor required Deutsche to at least advertise and provide such a warranty.

101.    Defendant Deutsche held a public auction sale of the Property of each Plaintiff and member of the Class at which the potential attendees and interested potential purchasers were told by the Notice that covenants and warranties of title were unavailable and that only a quitclaim deed would be delivered.   This had the foreseeable effect of discouraging potential buyers and caused the auction prices to

39

be lower than they would have been if the sales had been advertised with

warranties.  Similar conduct by Defendant Deutsche took place with respect to

each member of the Class, whose sale prospects and prices were all adversely

affected by the offering of a mere quitclaim deed or substantial equivalent.

102.   Advertising a sale by quitclaim deed in these circumstances was not

reasonably calculated to obtain the best possible price or give the property owner

the best advantage and was therefore a breach of duty by a foreclosing mortgagee

under the power of sale.

103.   The foregoing conduct was "unfair" and "deceptive" within the

meaning of HRS Section 480-2.

104.   As a proximate result of the failure to comply with the obligations of

the power of sale and the unfair and/or deceptive practices of Deutsche in the

foreclosure proceedings against each member of the Class as described above,

Plaintiffs and the other members of the Class lost possession and occupancy of

their real property and homes.  Said real properties were subjected to sale through

the foreclosure process, and said sales and transfers of ownership occurred at

below-market prices because of the "distressed sale" nature of the transaction.

105.   As a direct and proximate result of the wrongful acts described above,

Plaintiffs and the other members of the Class lost substantial equity in their

properties and/or had their residual debt increased, lost the use and rental value of

their properties from and after the date they lost possession, and incurred expenses, including but not limited to moving expenses, rental expenses and in some cases legal fees and costs, all in amounts to be proved at trial.

## ADDITIONAL ALLEGATIONS
## COMMON TO BOTH COUNTS

106.   Deutsche was the winning bidder by a purported "credit bid" at each of Plaintiffs' auctions and, in the case of the Lizza and Dean Properties, Deutsche re-sold the Properties for a sums substantially in excess of the amounts it purportedly bid.

107.   In addition, Deutsche has been unjustly enriched by its retention of the proceeds of foreclosure of the Plaintiffs and the Class' properties or its retention of the Class properties as "real estate owned," and a constructive trust should be imposed on the proceeds (and/or properties if they remain in Deutsche's possession), and same should be returned to Plaintiffs and the members of the Class in accordance with principles of equity.

108.   By virtue of the foregoing, Defendant Deutsche is liable to Plaintiff and all members of the Class for unfair and deceptive practices under HRS Chapter 480.  Plaintiffs and the other members of the Class are entitled to recover their economic losses sustained as a result of the above-described wrongful and/or unlawful conduct in amounts to be proved at trial and to receive all proceeds and

profits that Deutsche made or received by virtue of its wrongful and unlawful conduct.

109.   Each Plaintiff is a consumer for purposes of the claims asserted herein arising out of the sale of his property by Deutsche under a purported power of sale.  At all relevant times, Plaintiffs were consumers within the meaning of HRS Chapter 480 for the following reasons: (a) each Plaintiff is a natural person who committed money in an investment by investing borrowed money in real property.  Each Plaintiff borrowed the money to make that investment from a financial institution in the trade and business of lending money for purposes of personal investment; (b) Through a real property mortgage being enforced by a lender in the course of their trade or business, each Plaintiff had pledged the property in which he was investing as security for the loan he was using to make the investment; (c) each Plaintiff made payments on his loan, which payments included both principal and interest payments, as well as payments for property taxes and maintenance as required by the mortgage loan covenants, as the means by which each Plaintiff continued to invest in his Property; (d) By virtue of the foregoing, each Plaintiff is a "consumer" within the meaning of HRS § 480-1 with respect to the loan, the mortgage, and the efforts by Deutsche to foreclose the mortgage or otherwise to sell and/or acquire the Property in which Plaintiff had invested.

42

110.   The conduct of Deutsche described above occurred "in the conduct of any trade or commerce" within the meaning of HRS Section 480-2 because, among other things, the transactions involved the sales of real property at public auctions conducted by Deutsche on terms of sale advertised by Deutsche to the general public as part of Deutsche's own business activity.

111.   By virtue of HRS § 480-13, Plaintiffs and those other members of the Class who are also "consumers" within the meaning of HRS Chapter 480 are entitled to recover treble damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Lizza, Dean and Mauch, individually and on behalf of all those similarly situated, pray for judgment against Deutsche as follows:

(1)   For damages against the Deutsche in an amount to be determined at trial;

(2)   For reimbursement of costs and expenses, including reasonable provision for attorneys' fees in accordance with HRS Chapter 480;

(3)   For prejudgment interest;

(4)   For treble damages as provided by law;

(5)   For punitive damages;

43

(6)     for equitable and injunctive relief (a) imposing a constructive trust on

all property and monies obtained by Deutsche by use of post-August

1, 2008 assignments and (b) restraining and enjoining Deutsche from

using, asserting or relying on any assignment executed after August 1,

2008 that is purportedly executed by an originating lender who had

already assigned all its interest in the note and mortgage prior to

August 1, 2008 to a third party other than Deutsche.

(7)     For such further and additional relief as the Court deems appropriate

and just.

DATED:     Honolulu, Hawai'i, March 31, 2014.

/s/ James J. Bickerton
JAMES J. BICKERTON
STANLEY H. ROEHRIG
RAYMOND C. CHO
VAN-ALAN H. SHIMA
Attorneys for Plaintiffs
KARL P. LIZZA , GARY L. DEAN and
JOHN J. MAUCH individually and on
behalf of all others similarly situated

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KARL P. LIZZA, GARY L. DEAN, JOHN J. MAUCH, individually and on behalf of all others similarly situated, | CIVIL NO.13-00190 HG-BMK (Class Action) |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY and DOE DEFENDANTS 1-50, | |
| Defendants. | |

Plaintiffs KARL P. LIZZA, GARY L. DEAN and JOHN J. MAUCH

Individually and on behalf of all others similarly situated, hereby demand a trial by

jury as to all issues so triable in the above-entitled cause.

DATED:    Honolulu, Hawai'i, March 31, 2014.


*/s/ James J. Bickerton*
JAMES J. BICKERTON
STANLEY H. ROEHRIG
RAYMOND C. CHO
VAN-ALAN H. SHIMA

Attorneys for Plaintiffs
KARL P. LIZZA , GARY L. DEAN and
JOHN J. MAUCH individually and on
behalf of all others similarly situated

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| KARL P. LIZZA, GARY L. DEAN, JOHN J. MAUCH, individually and on behalf of all others similarly situated, | CIVIL NO.13-00190 HG-BMK |
| Plaintiffs, | **CERTIFICATE OF SERVICE** |
| vs. | |
| DEUTSCHE BANK NATIONAL TRUST  COMPANY and DOE DEFENDANTS 1-50, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on the date and by the method of service noted below, a true and correct copy of the preceding document was served on the following at their last known addresses:

**Served electronically through CM/ECF:**

ANDREW V. BEAMAN, ESQ.
Chun Kerr Dodd Beaman & Wong LLLP
Topa Financial Center, Fort Street Tower
745 Fort Street, 9th Floor
Honolulu, Hawai'i 96813
abeaman@ckdbw.com

BERNARD J. GARBUTT, III, ESQ.
Morgan Lewis & Bockius, LLP
101 Park Avenue
New York, New York 10178
bgarbutt@morganlewis.com

Attorneys for Defendant
DEUTSCHE BANK NATIONAL TRUST COMPANY

DATED:  Honolulu, Hawai'i, March 31, 2014.


                              */s/ James J. Bickerton*
                              JAMES J. BICKERTON
                              STANLEY H. ROEHRIG
                              RAYMOND C. CHO
                              VAN-ALAN H. SHIMA

                              Attorneys for Plaintiffs
                              KARL P. LIZZA , GARY L. DEAN and
                              JOHN J. MAUCH individually and on
                              behalf of all others similarly situated